UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LISA VIONI and HEDGE CONNECTION INC.,

                                    Plaintiffs,

        - against –                                        Case No. 08 CV 02950 (PAC)
                                                           (ECF Case)
AMERICAN CAPITAL STRATEGIES, LTD.,
PROVIDENCE INVESTMENT MANAGEMENT,
LLC, PROVIDENCE INVESTMENT PARTNERS,
LLC, and RUSSELL JEFFREY,

                                    Defendants.

------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Stewart D. Aaron
Erik C. Walsh
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022
(212) 715-1000
Stewart.Aaron@aporter.com
Erik.Walsh@aporter.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

I.     Parties.......................................................................................................................... 1

II.    Complaint Allegations ............................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.     Standards Under Fed. R. Civ. P. 12(b)(6)................................................................. 4

II.    Plaintiffs' Breach Of Contract Claims Are Barred By The Statute Of Frauds ................... 4

      A.    Allegations Of Oral Promises Are Legally Irrelevant ............................................. 5

      B.    Vioni Must Allege A Writing Executed By Defendants In Which
            Defendants Assent To The Material Terms Of A Finder's Fee Agreement. ........... 6

      C.    The Emails To Which Vioni Refers Do Not Create
            A Contract And Actually Reject Vioni's Requested Finder's Fee ......................... 8

      D.    The Applicable Case Law Supports Dismissal Of
            Plaintiffs' Breach Of Contract Claims On Statute Of Frauds Grounds ................ 12

III.   Vioni's Quantum Meruit Claims Fail For the Same Reasons
      As The Breach Of Contract Claims Fail ................................................................. 15

IV.   Plaintiffs Allege No Facts To Support The "Lift Out" Claims.......................................... 16

V.    Vioni's Failure To Register As A Broker Under The Securities
      Exchange Act Of 1934 Renders Any Purported Agreement Void And
      Unenforceable For Illegality ................................................................................... 17

      A.    Vioni Was A "Broker" Required To Register With The SEC............................... 18

      B.    Vioni's Purported Finder's Agreements With Defendants Would Be Void.......... 19

CONCLUSION................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

AG Ltd. v. Liquid Realty Partners, LLC,
    448 F. Supp. 2d 583 (S.D.N.Y. 2006)......................................................................6, 8, 13

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)..........................................................................................4

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007)...............................................................................................4

Bronner v. Park Place Entertainment Corp.,
    137 F. Supp. 2d 306 (S.D.N.Y. 2001)....................................................4, 5-6, 12, 13-14

Carruthers v. Flaum,
    450 F. Supp. 2d 288 (S.D.N.Y. 2006)........................................................................7

Central Fed. Sav., F.S.B. v. National Westminster Bank, U.S.A.,
    176 A.D.2d 131, 574 N.Y.S.2d 18 (1st Dep't 1991) ...............................................8, 14

Crabtree v. Elizabeth Arden Sales Corp.,
    305 N.Y. 48 (1953) ...............................................................................................6-7

Diana Allen Life Ins. Trust v. BP P.L.C.,
    No. 06 Civ. 14209, 2008 WL 878190 (S.D.N.Y. Mar. 31, 2008) ....................................4

F.H. Krear & Co. v. Nineteen Named Trustees,
    545 F. Supp. 372 (S.D.N.Y. 1982) ............................................................................7

Fort Howard Paper Co. v. William D. Witter, Inc.,
    787 F.2d 784 (2d Cir. 1991)......................................................................................8

Freedman v. Chemical Construction Corp.,
    43 N.Y.2d 260, 401 N.Y.S.2d 176 (1977) ...............................................................5, 6

Greystone P'ships Group, Inc. v. KLM N.V.,
    815 F. Supp. 745 (S.D.N.Y. 1993) .........................................................9, 12, 13-14

Intercontinental Planning Ltd. v. Daystrom, Inc.,
    24 N.Y.2d 372, 300 N.Y.S.2d 817 (1969) ...................................................................6

**Page(s)**

*Karlin v. Avis,*
    457 F.2d 57 (2d Cir.), *cert. denied,* 409 U.S. 849 (1972)..................................7, 8

*Klein v. Smigel,*
    44 A.D.2d 248, 354 N.Y.S.2d 117 (1st Dep't 1974) ........................................15

*Minichiello v. Royal Business Funds Corp.,*
    18 N.Y. 2d 521, 277 N.Y.S.2d 268 (1966) ......................................................16

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,*
    507 F.3d 117 (2d Cir. 2007).............................................................................17

*Regional Props., Inc. v. Financial & Real Estate Consulting Co.,*
    678 F.2d 552 (5th Cir. 1982) ...........................................................................20

*SEC v. Hansen,*
    No. 83 Civ 3692, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984)...............................19

*SEC v. Margolin,*
    No. 92 Civ. 6307, 1992 WL 279735 (S.D.N.Y. Sept. 30, 1992)........................19

*SEC v. Martino,*
    255 F. Supp. 2d 268 (S.D.N.Y. 2003)........................................................18, 20

*Springwell Corp. v. Falcon Drilling Co.,*
    16 F. Supp. 2d 300 (S.D.N.Y. 1998)...............................................................5, 7

*Stephen Pevner, Inc. v. Ensler,*
    309 A.D.2d 722, 766 N.Y.S.2d 183 (1st Dep't 2003) ........................................7

*Sugerman v. MCY Music World, Inc.,*
    158 F. Supp. 2d 316 (S.D.N.Y. 2001)..............................................................15

*Torsiello Capital Partners LLC v. Sunshine State Holding Corp.,*
    Index No. 600397/06 (Sup. Ct. N.Y. Co., April 1, 2008)...........................19-20

*Urgo v. Patel,*
    297 A.D.2d 376, 746 N.Y.S.2d 733 (2d Dep't 2002) .........................................7

*Warshay v. Guinness PLC,*
    750 F. Supp. 628 (S.D.N.Y. 1990) .....................................................................6

*Zeising v. Kelly,*
    152 F. Supp. 2d 335 (S.D.N.Y. 2001)..................................................................6

**Page(s)**

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78c(a)(4)(A) ................................................................................................18

15 U.S.C. § 78cc(b)........................................................................................................20

15 U.S.C. § 78o(a)(1).....................................................................................................18

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 4

N.Y. G.O.L. § 5-701(a)(10) ....................................................................................5, 6, 15

John R. Wirthlin, SEC No-Action Ltr., 1999 WL 34898 (Jan. 19, 1999) .....................19

Joseph K. Bannon, C.P.A., SEC No-Action Ltr., 1988 WL 235393 (Dec. 9, 1988).....................19

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of defendants' motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint on the ground that it fails to state claims for breach of contract and/or quantum meruit. Plaintiffs' claims are barred by the Statute of Frauds. In addition, even if any alleged agreement existed relating to plaintiffs being paid fees with respect to transactions in securities, such alleged agreement is illegal and unenforceable.

## STATEMENT OF FACTS

### I.    Parties

Plaintiff, Lisa Vioni ("Vioni"), is the founder, Chief Executive Officer, President and owner of Hedge Connection, Inc. ("HCI"). [Compl. ¶ 6; Ex. B to Aaron Decl.].[1] HCI is a "web-based marketing tool that facilitates relationship building and allows direct interaction and exchange of information between hedge funds. . . ." [Ex. B to Aaron Decl.]. Vioni and HCI will be referred to collectively as "Plaintiffs."

Defendant, American Capital Strategies, Ltd. ("ACAS"), is a publicly traded investment corporation. [Compl. ¶ 11]. In its dealings with Vioni, ACAS acted through Robert K. Grunewald ("Grunewald"), a Managing Director of ACAS's Financial Services Group. [*Id.* ¶ 15].

Defendant, Providence Investment Management, LLC ("PIM"), is an investment management company. [*Id.* ¶ 34]. Plaintiffs allege that defendant, Providence Investment Partners, LLC ("PIP") owns and controls PIM, or that PIM owns and controls PIP. [*Id.* ¶¶ 37, 40-41]. Defendant, Russell Jeffrey ("Jeffrey"), was a principal of PIM and PIP. [*Id.* ¶¶ 44-45].

---

[1]    "Aaron Decl." is used in this memorandum to refer to the accompanying Declaration of Stewart D. Aaron in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, sworn to June 24, 2008. The Complaint in this action is annexed as Exhibit A to the Aaron Declaration.

In their dealings with Vioni, PIM and PIP acted through Jeffrey. [*Id.* ¶¶ 46, 48]. PIM, PIP and Jeffrey will be referred to collectively as the "Providence Defendants," and ACAS and the Providence Defendants will be referred to collectively as "Defendants."

## II.    **Complaint Allegations**

Vioni alleges that she had agreements with ACAS and the Providence Defendants to "introduce each to a viable business partner." [Compl. ¶ 1(a)]. Acting as a "Finder," Vioni introduced ACAS and the Providence Defendants to each other in April 2007. [*Id.* ¶¶ 1(b); 59-60]. As a result of this introduction, ACAS acquired PIM and PIP. ACAS also hired Jeffrey and other employees of PIM and PIP (the "Providence Investment Team") to manage newly-created investment vehicles for ACAS (the "Jeffrey Funds"). [*Id.* ¶¶ 1(c)-(d); 104; 108; 111; 116; 122; 125; 145(c).] Vioni alleges that ACAS and its affiliates have invested $29 million in one of the Jeffrey Funds, and $50 million in another of the Jeffrey Funds, with the intention of raising $350 million more. [*Id.* ¶¶ 120, 124].

Vioni claims that her introduction of ACAS and the Providence Defendants entitles her and HCI to fees consisting of: (a) a finder's fee from both ACAS and the Providence Defendants for the introduction; (b) a finder's fee from ACAS for the acquisition and hiring of the Providence Investment Team; (c) a fee from ACAS for the investments transferred from Providence funds to ACAS funds; (d) a fee from ACAS for prospective investments in Providence funds that, apparently, were instead made in ACAS funds managed by the Providence Investment Team; (e) a marketing fee from both ACAS and the Providence Defendants for the monies invested in the Jeffrey Funds; (f) a percentage of ACAS's management fees from both ACAS and the Providence Defendants that ACAS receives related

to the Jeffrey Funds; and (g) a percentage of ACAS's performance fees from both ACAS and the Providence Defendants that ACAS receives related to the Jeffrey Funds. All told, Vioni claims that her introduction of ACAS to the Providence Defendants entitles her to in excess of $38 million in fees—in excess of $23 million from ACAS plus in excess of $15 million from the Providence Defendants. [*Id.* ¶¶ 145-47; 154-69; 186-88 & Prayer for Relief].

Vioni admits that she was not a registered representative of a broker-dealer during the period covered by the Complaint. [*See Id.* ¶ 133]. In addition, she acknowledges that "[r]egulations may have required [her] to register as a representative with a broker-dealer at the time the payments were due to her from defendants. . . ." [*Id.* ¶ 132].

Vioni's support for her contention that she had a finder's fee agreement with each of ACAS and the Providence Defendants is based upon a series of oral statements and email exchanges she had with Grunewald (on behalf of ACAS) and Jeffrey (on behalf of himself and the Providence Defendants) between April and August 2007. [*Id.* ¶¶ 61-99]. Vioni alleges that these oral statements and emails establish that both ACAS and the Providence Defendants agreed to pay her the fees listed above. Vioni, however, chose not to attach any of the emails referred to in her Complaint. Defendants submit such emails in support of this motion to dismiss. [Exs. C to G to Aaron Decl.].

For the reasons set forth below, Plaintiffs' breach of contract and quantum meruit claims should be dismissed in their entirety.

## ARGUMENT

### I.    Standards Under Fed. R. Civ. P. 12(b)(6)

While a Court "'must accept as true all of the factual allegations contained in the

Complaint,' and construe the complaint in the light most favorable to the plaintiff, the "'[f]actual

allegations must be enough to raise a right to relief above the speculative level.'" *Diana Allen*

*Life Ins. Trust v. BP P.L.C.*, No. 06 Civ. 14209, 2008 WL 878190, at *3 (S.D.N.Y. Mar. 31,

2008) (Crotty, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

Further, when deciding a motion to dismiss, the Court may consider "'any written instrument

attached to the complaint, statements or documents incorporated into the complaint by reference

. . . and documents possessed by or known to the plaintiff and upon which it relied in bringing

the suit.'" *Id.* (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)

(citation omitted) (ellipses in original)). It is appropriate for a Court to grant a motion to dismiss,

pursuant to Fed. R. Civ. P. 12(b)(6), where, as here, the oral statements and writings alleged in

support of a finder's fee agreement cannot satisfy the Statute of Frauds. *See, e.g., Bronner v.*

*Park Place Entertainment Corp.*, 137 F. Supp. 2d 306, 311-13 (S.D.N.Y. 2001).

### II.    Plaintiffs' Breach Of Contract Claims Are Barred By The Statute Of Frauds

Plaintiffs' breach of contract claims set forth in the First, Third[2] and Fifth Causes of

Action are based upon alleged agreements between Vioni and the Defendants. Vioni contends

that these alleged agreements arise out of purported oral promises and a series of emails between

ACAS and the Providence Defendant and her. As set forth below, these claims are barred by

New York's Statute of Frauds.

---

[2]    As set forth below, the Third Cause of Action lacks any real factual predicate. However, insofar as it is based upon purported oral agreements and the emails referred to in the Complaint, it too is barred by the Statute of Frauds.

New York's Statute of Frauds, codified at New York's General Obligations Law, Section 5-701(a)(10), states in relevant part:

> a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> . . .
>
> 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate interest therein, or of a business opportunity, business, its goodwill, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiation" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation . . . .

N.Y. G.O.L. § 5-701(a)(10). This section of the Statute of Frauds applies to finders such as Vioni.[3]

### A. Allegations Of Oral Promises Are Legally Irrelevant.

The Statute of Frauds requires Vioni to allege a *written* agreement. N.Y. G.O.L. § 5-701(a)(10). Each allegation of an oral agreement in the Complaint, even if true, is irrelevant to Vioni's claims. "Section 5-701 is clear that oral finder's fee agreements are void." *Bronner*, 137

---

[3]    In construing Section 5-701(a)(10), the New York Court of Appeals held that "[t]he historical controversy whether [the statute] applied to finders as distinguished from brokers is settled to include both." *Freedman v. Chemical Construction Corp.*, 43 N.Y.2d 260, 266, 401 N.Y.S.2d 176, 180 (1977) (citations omitted).  In that case, the Court of Appeals held that Section 5-701(a)(10) applied to alleged fee agreements between principals and an intermediary where the intermediary provides "'know-how' or 'know-who' in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in an enterprise . . . ." 43 N.Y.2d at 267, 401 N.Y.S.2d at 181. *See also Springwell Corp. v. Falcon Drilling Co.*, 16 F. Supp. 2d 300, 304 (S.D.N.Y. 1998) ("It is well settled that the Statute of Frauds applies to claims for finder's fees."). Here, Vioni alleges she is owed, *inter alia*, a "Finder's fee for the introduction of [Defendants]" and a fee for ACAS's "acquisition and hiring of the entire Providence Investment Team…." [Compl. ¶ 145(a)-(b)].  Vioni's allegations bring her claims squarely within Section 5-701(a)(10).

F. Supp. 2d at 312. A legion of case law exists in New York and in this District consistent with this fundamental principle. *See, e.g., Freedman*, 43 N.Y.2d at 267, 401 N.Y.S.2d at 181; *Intercontinental Planning Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 379-80, 300 N.Y.S.2d 817, 823 (1969); *see also Zeising v. Kelly*, 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001); *Warshay v. Guinness PLC*, 750 F. Supp. 628, 636 (S.D.N.Y. 1990), *aff'd,* 935 F.2d 1278 (2d Cir. 1991).

      B.      Vioni Must Allege A Writing Executed By Defendants In Which
              Defendants Assent To The Material Terms Of A Finder's Fee Agreement.

Vioni has not alleged a traditional written agreement, that is to say, a writing or series of writings containing all the material terms of the purported finder's fee agreement, which Defendants have assented to and executed. That is because there is none. Instead, Vioni attempts to satisfy the Statute of Frauds by piecing together a series of emails between herself and Defendants to allege an agreement with each. Although a series of emails, taken together, may take an otherwise unenforceable agreement outside the Statute of Frauds, *see Bronner*, 137 F. Supp. 2d at 311 (citing *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 56 (1953)), those writings must still evince Defendants' assent to be bound by all the material terms. *AG Ltd. v. Liquid Realty Partners, LLC*, 448 F. Supp. 2d 583, 586 (S.D.N.Y. 2006).

The most obvious indicator of assent is a signature. Indeed, the Statute of Frauds requires that a finder's fee agreement be "subscribed by the party to be charged." N.Y. G.O.L. § 5-701(a). New York courts rigorously enforce the requirement that a defendant cannot be bound by a writing that it did not sign. *See, e.g., Bronner*, 137 F. Supp. 2d at 311 ("[I]t is also well established that unsigned writings prepared by a plaintiff, without more, do not suffice to bind a defendant.") (citing *Crabtree*, 305 N.Y. at 56). If, as here, the contract is alleged to have formed over a series of writings, "[a]t least one writing, 'the one establishing a contractual relationship

6

between the parties, must bear the signature of the party to be charged (or his authorized agent)

. . . ." *Id.* at 311-12 (citing *Crabtree,* 305 N.Y. at 56); *see also Karlin v. Avis*, 457 F.2d 57, 62

(2d Cir.) (unsigned letter purporting to set forth finder's fee agreement prepared by plaintiff will

not bind defendant), *cert. denied*, 409 U.S. 849 (1972); *Stephen Pevner, Inc. v. Ensler*, 309

A.D.2d 722, 722, 766 N.Y.S.2d 183, 184 (1st Dep't 2003) (collective writings offered by

plaintiff found insufficient to satisfy the statute of frauds because "they rely almost entirely upon

the unexecuted agreements prepared by plaintiff himself"); *Urgo v. Patel*, 297 A.D.2d 376, 377-

78, 746 N.Y.S.2d 733, 735 (2d Dep't 2002) (writing unsigned by defendant insufficient to satisfy

the statute of frauds).

Even if an alleged finder's fee agreement is signed by a defendant, a plaintiff must also

allege that the executed writing clearly evinces the defendant's intent to be bound by the

agreement's material terms. As stated in *F.H. Krear & Co. v. Nineteen Named Trustees*,

"Memoranda can satisfy the Statute of Frauds only when the party charged signed a writing

clearly evidencing his assent to the contract's terms and there is 'no doubt that the memorandum

contains all the essential terms of the contract.'" 545 F. Supp. 372, 375 (S.D.N.Y. 1982)

(citation omitted); *see also Carruthers v. Flaum*, 450 F. Supp. 2d 288, 308 (S.D.N.Y. 2006) (To

satisfy the statute of frauds, "[t]he writing itself 'must designate all parties, identify and describe

the subject matter and state all of the essential terms of a complete agreement. 'The writing must

set forth the entire contract with reasonable certainty.'") (citations omitted); *Springwell Corp.*, 16

F. Supp. 2d at 303-04 (to comply with the Statute of Frauds, the writing "must contain all

material terms of the agreement").

7

Compensation obviously is a material term of a finder's fee agreement. *See Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 791 (2d Cir. 1991). Accordingly, the writing must provide "'evidence of the [the defendant's] assent to paying the fee'" purportedly agreed upon. *AG Ltd.*, 448 F. Supp. 2d at 586 (quoting *Karlin*, 457 F.2d at 61). Without a "meeting of the minds" on this essential term, there can be no enforceable contract. *Central Fed. Sav., F.S.B. v. National Westminster Bank, U.S.A.*, 176 A.D.2d 131, 133, 574 N.Y.S.2d 18, 19 (1st Dep't 1991).

C.    The Emails To Which Vioni Refers Do Not Create
A Contract And Actually Reject Vioni's Requested Finder's Fee.

The emails referred to in the Complaint do not reflect a meeting of the minds, and indeed in some cases outright reject Vioni's requested finder's fee:

April 19, 2007 emails (¶¶ 67-68)

Vioni alleges that, in an email exchange on April 19, 2007, she and Jeffrey confirmed Jeffrey's "statement that Vioni would be paid for her services for introducing" defendants to each other. [Compl. ¶ 67]. Vioni also alleges that the she and Jeffrey "confirmed" that she "would be paid for her services for monies invested in funds managed by JEFFREY calculated on the future growth of the funds." [*Id.* ¶ 68].

Jeffrey confirmed no such thing. In her April 19, 2007 email, Vioni refers to "various engagement letters that I need to get done," and states that she "would like to get a little more specific as soon as we can with how the deal between you and me will work." [Ex. C to Aaron Decl.]. Thus, at this point in time, there plainly is no "deal." Also, in reply to Vioni's statements that she be paid "a significant upfront payment for the introduction of [ACAS]" and that her fee "be tied to the growth of the business going forward," Jeffrey is non-responsive. [*Id.*]. Jeffrey

8

writes, "let's meet again if your schedule permits to iron out more specifics." [*Id.*]. But, even assuming Jeffrey's reply is in reference to Vioni's proposed finder's fee, at most, Jeffrey is stating that they will continue to discuss the terms of Vioni's finder's fee. His e-mail certainly is not an acceptance of Vioni's proposed terms, which in any event are vague and indefinite.

April 20, 2007 email (¶ 70)

Vioni alleges that, in an email dated April 20, 2007, "Grunewald confirmed to Vioni that Vioni would be paid by [ACAS] for her services, with details of payment dependent on the final structure of the transactionS." [Compl. ¶ 70]. Defendants have been unable to locate an email of this date that matches the allegation in Paragraph 70 of the Complaint. There is, however, an April 19, 2007 (8:09 p.m.) email from Grunewald to Vioni that appears to be the email to which Vioni refers. [Ex. D to Aaron Decl.]. That email was responding to an email sent by Vioni at 8:40 a.m. on April 19, 2007, in which Vioni refers to an "upfront fee" and inquires if "there [is] any type of ownership that I could tie myself to in this structure so that I can participate in the growth of the business? Could I act as a consultant and get paid an ongoing fee on money raised for [Jeffrey's] business for example?" [*Id.*].

Grunewald responds: "I think the only realistic way to work out a fee arrangement would be as a straight advisory fee or a commitment on our part to use you for a bigger opportunity than would have otherwise existed." [*Id.*]. Grunewald's response, a counteroffer, constitutes a rejection of Vioni's proposed finder's fee. *See Greystone P'ships Group, Inc. v. KLM N.V.*, 815 F. Supp. 745, 753 (S.D.N.Y. 1993) ("A seminal law of contracts is that a counteroffer constitutes a rejection of an offer as a matter of law.") (citations omitted).

9

<u>April 23, 2007 email and Draft Engagement Letter (¶ 75)</u>

Vioni claims that, in an email on April 23, 2007, Grunewald "confirmed" that she "would be paid in relation to PROVIDENCE, with details of the payment dependent on the final structure of the transactions." [Compl., ¶ 75]. This is a distortion of what the email actually says.

Grunewald's April 23, 2007 email is in response to a memorandum entitled "Outline for engagement letter" that was prepared and sent by Vioni. In the memorandum, Vioni suggests that her payment be tied to the growth of the new hedge fund that will be created as a result of ACAS's acquisition of Providence (notwithstanding Grunewald's rejection of this proposal in his April 19, 2007 email discussed above). Vioni proposes that she be paid in either one of two ways: (1) "a one-time finders fee of 2% on all new investments . . . OR [(2)] 20% on all fees for all new investments for a period of 5 years . . . " [Ex. E to Aaron Decl. (Memorandum, p. 2)]. Significantly, Vioni's memorandum states that it is meant for negotiating purposes only: "This letter is meant to be a starting point and outline for how we will work together to raise capital for [ACAS's] new hedge fund product. We would like to insert boilerplate legal qualifications related to indemnification, audit provisions, correct entity names etc. into a contract format." [*Id.* at p. 3].

Grunewald responds to the email and enclosed memorandum by stating merely: "Tks. We will need to tweak this, but lets figure out where we are on Providence first." [Ex. E to Aaron Decl.]. There simply is no confirmation by Grunewald in this email that Vioni would be paid as her Complaint alleges.

<u>May 14, 2007 emails (¶¶ 82-83)</u>

Vioni alleges that, in emails on May 14, 2007, she and Jeffrey "confirmed" that she "would be paid in relation to the [ACAS] transaction" and that the details "would be determined when the structure of the [ACAS] transactions were known." [Compl., ¶¶ 82-83]. Jeffrey does not "confirm" anything. To the contrary, Jeffrey says that he "thinks" that they might be able to create a broker-dealer position for Vioni as part of the ACAS acquisition, but that the "prudent approach is to see how they [ACAS] come back." [Ex. F to Aaron Decl.].

Significantly, in Vioni's response to Jeffrey, she acknowledges that they have only had discussions concerning compensation, and that it would be a good idea to start putting the proposed terms into a written outline. She writes:

> You have asked me if I want to start outlining details of how I get compensated for the ACAS deal and the new credit fund etc. I do think that is a prudent thing to do. I would like to start outlining a general letter of understanding of how I will be compensated for the ACAS deal and the money that has been raised or will be raised by me for the new credit fund. I know that we have spoken about some terms, but I think that it makes sense to try to outline it a little more clearly.

[*Id.*]. This email in Vioni's own words reflects that there is no understanding with respect to her compensation.

<u>July 17, 2007 emails (¶ 92)</u>

Vioni alleges that, in a July 17, 2007 email, Grunewald stated, among other things, "that Vioni should be paid for making the introduction" of Jeffrey and the Providence Defendants. [Compl., ¶ 92]. There is no such statement in Grunewald's July 17 email.

Grunewald's email is a reply to Vioni's email of the same date in which Vioni outlines her proposal for her finder's fee. She proposes that she should be paid (1) a marketing fee based

11

on the money that ACAS invests in the fund, and (2) a fee for introducing "a key team of executives that are joining ACAS." [Ex. G to Aaron Decl.]. Grunewald replies by stating that he does "not expect to pay any fee for capital that ACAS invests as an LP [limited partner]," and that "ACAS does not pay fees other than those for a retained search for the introduction of employees." [*Id.*]. Grunewald then proposes a counteroffer: "I would propose that this introduction should give you a right of first refusal to help us raise this capital on terms consistent with those our treasury dept [department] would otherwise receive." [*Id.*]. This counteroffer stands as a rejection of Vioni's proposals. *See Greystone*, 815 F. Supp. at 753.

Grunewald's July 17, 2007 email is the last writing from any Defendant referred to in the Complaint. As of July 17, 2007, it is plain that there was no meeting of the minds as to the terms of a contract between Vioni, on the one hand, and ACAS and/or the Providence Defendants, on the other hand.

D.     The Applicable Case Law Supports Dismissal Of
       Plaintiffs' Breach Of Contract Claims On Statute Of Frauds Grounds.

The case of *Bronner v. Park Place Entertainment*, which was decided on a motion to dismiss, is closely parallel to the circumstances here. In *Bronner*, plaintiff sought a commission for using his "know how" and "know who" to procure an introduction of a developer to an Indian tribe. *Bronner*, 137 F. Supp. 2d at 311. Plaintiff attempted to establish the existence of a commission agreement that would satisfy the Statute of Frauds by referring to an oral agreement that he claims was reduced to writing in a letter that he wrote to defendant. *Id.* at 309. The Court granted defendant's motion to dismiss, ruling that the purported agreement did not satisfy the Statute of Frauds.

The Court held that: (1) the oral agreement was unenforceable under the Statute of Frauds (*id.* at 310-11), and (2) that the writing did not satisfy the Statute of Frauds because it was neither prepared or executed by defendants. *Id.* at 312. Because plaintiff could refer to no other document signed by defendant (or his agents) that set forth the terms of the purported commission agreement, the Court granted defendant's motion to dismiss. *Id.* at 312. *See also AG Ltd.*, 448 F. Supp. 2d at 586-88 (plaintiff could not satisfy the statute of frauds where the only documents that stated the material terms of the fee agreement were drafted by the plaintiff and unsigned by defendant, and the other writings offered did not "even remotely refer [] to an agreement having been reached as to a success fee").

Similarly, in the present case, there is no writing prepared or signed by any of the Defendants that even comes close to demonstrating their assent to Vioni's proposals for her finder's fee. Most certainly, there is no writing that demonstrates any of the Defendants' assent to the detailed and substantial fees that Vioni now seeks. *See* Compl. ¶¶ 145(a)-(e); 154-69; 186(a)-(d). Moreover, the circumstances here are even less favorable for Vioni than the plaintiff in *Bronner* because the writings to which Vioni refers suffer from the additional and fatal flaw that some reject her proposed finder's fee, and offer a counterproposal. As in *Bronner,* this Court should dismiss the breach of contract claims against all Defendants because any such agreement cannot satisfy the Statute of Frauds.[4]

---

[4]     *Bronner* is instructive also for its consideration of *Greystone Partnerships Group, Inc. v. KLM N.V.*, 815 F. Supp. 745 (S.D.N.Y. 1993). In *Greystone*, the Court rejected plaintiff's claim of an oral commission agreement for negotiating a deal. The *Greystone* court was particularly struck by the size of the deal ($80 million) and the commission sought ($2.4 million), stating, "[t]hese are not the facts upon which oral contracts are likely made." *Greystone* 815 F. Supp at 750. The *Bronner* court cited this language with approval noting that the size of the deal in that case would "generate millions of dollars in annual gross revenue." *Bronner*, 137 F. Supp. 2d at 310-11 and n.1. Here, Vioni's claims total in excess of $23 million against ACAS and in excess of $15 million against the

Footnote continued on next page

13

At best, Vioni has demonstrated that the parties were negotiating the material terms of a finder's fee agreement. This is not sufficient to show defendants' intent to be bound. *Central Fed. Sav.*, 176 A.D.2d at 133, 574 N.Y.S.2d at 19 ("The letters which were exchanged did not indicate a present intent to be bound, but rather an intent to negotiate the essential terms of the binding agreement. Essential terms such as ultimate price were left open. Clearly, there was no 'meeting of the minds' to support the existence of an enforceable contract.") (citation omitted).

Brokers and finders regularly operate in this manner (*i.e.*, procuring an introduction with the hope of attaining some future benefit). As the Court explained in *Bronner*:

> Persons having no formal agreement attempt to broker arrangements all the time in the hope that some reward will be forthcoming. While a purported oral agreement between plaintiff and defendant can be said to lend some significance to plaintiff's willingness to reach out to the Mohawks, it is equally explainable as preparatory to a future, or continuing, business relationship. There is nothing unintelligible about someone in Bronner's position doing what he did--even in the absence of any agreement.

*Bronner*, 137 F. Supp. 2d at 312-13. This is exactly how things were left in the last writing alleged by Vioni. In his July 17, 2007 email Grunewald rejected Vioni's proposed finder's fee and countered that the introduction would entitle her to work for ACAS to raise funds in the future. [Ex. G to Aaron Decl.]. Grunewald in his July 17, 2007 email also offers Vioni the prospect of a continuing business relationship: "I am hopeful that the meeting on the 25th will provide the venue for a broader relationship with you beyond this one transaction." [*Id.*]. All of Plaintiffs' breach of contract claims therefore should be dismissed with prejudice.

---

Footnote continued from previous page
Providence Defendants. As in *Greystone* and *Bronner*, the largesse of the fee sought in the absence of a written, signed agreement, is telling.

**III.    Vioni's Quantum Meruit Claims Fail For The Same Reasons As The Breach Of Contract Claims Fail**

Vioni's quantum meruit claims set forth in the Second, Fourth[5] and Sixth Causes of Action also are precluded by the Statute of Frauds.  N.Y.G.O.L. § 5-701(a)(10) provides in relevant part that the Statute of Frauds "shall apply to a contract implied in fact or in law to pay reasonable compensation . . . ."  As stated in *Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316, 326 (S.D.N.Y. 2001), "'[t]he Legislature amended subdivision 10 [of § 5-701(a)] to clearly apply the section to finders and to preclude any recovery in quantum meruit . . . . .'" (citation omitted).

The writings that Vioni refers to in the Complaint do not take her quantum meruit claims out of the Statute of Frauds.  As with the breach of contract claims, the writings relied upon must establish that the defendants actually agreed to pay a finder's fee.  *Klein v. Smigel*, 44 A.D.2d 248, 251, 354 N.Y.S.2d 117, 120 (1st Dep't 1974) (dismissing quantum meruit claim where relied upon writing did not satisfy the Statute of Frauds because it did not contain "all the material terms of the purported agreement") (citations omitted), *aff'd*, 36 N.Y. 2d 809, 375 N.Y.S.2d 897 (1975).

More importantly, a quantum meruit claim cannot survive where, as here, a writing negates defendant's intention to pay the requested finder's fee.  The case of *Klein v. Smigel* is directly on point.  There, the plaintiff, like Vioni, sought a finder's fee for an introduction between two corporations, which led to one corporation acquiring the other.  *Id.* at 249, 354

---

[5]    As set forth below, the Fourth Cause of Action lacks any real factual predicate.  However, insofar as it is based upon purported oral agreements and the writings referred to in the Complaint, it too is barred by the Statute of Frauds.

N.Y.S.2d at 118-19.  The plaintiff based his claim on an alleged oral agreement, and a writing

that purported to show the existence of said agreement.  *Id.*  The First Department ruled that the

writing was insufficient under the Statute of Frauds.  The Court stated that the letter was

"qualitatively and quantitatively insufficient to satisfy the applicable Statute of Frauds, since it

does not contain all the material terms of the purported agreement.  Any other conclusion would

obviate the legislative intent of the statute and ignore the caveat enunciated in *Minichiello v.*

*Royal Business Funds Corp.*, 18 N.Y. 2d 521, 526-27, [277 N.Y.S.2d 268, 271-72 (1966)], that

the aim of the statute is to protect businessmen from the type of claim being asserted here—a

claim for $90,000 finder's fee, not supported by written evidence."  44 A.D.2d at 251, 354

N.Y.S.2d at 120 (citations omitted).  The First Department further found that, in fact, the letter

"negate[d] any expression of an intention or obligation to pay" the fee.  *Id.*  The circumstances

here are no different.  The quantum meruit claims against all defendants should be dismissed

with prejudice.

## IV.    Plaintiffs Allege No Facts To Support The "Lift Out" Claims

The Third Cause of Action: "Breach of Lift-Out Contract By [ACAS]," alleges that

ACAS breached an agreement by failing to pay Vioni a fee for the investments that were

transferred from the Providence Defendants to ACAS, and for those investments that were

considered for management by Providence Defendants, but ended up being made in funds

managed by ACAS.  [Compl. ¶¶ 160, 161].  But, there is not a single reference in the

Complaint's 134 paragraphs of factual allegations regarding a "Lift-Out" contract, let alone an

allegation that such an agreement was breached.  Vioni's pleading of the Third Cause of Action

thus does not remotely approach satisfying the requirement that a Complaint "allege facts that

are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007) (citing *Twombley* 127 S. Ct. at 1966). The Third Cause of Action therefore must be dismissed, in addition to the Fourth Cause of Action, which is a Quantum Meruit claim pled in the alternative, which also lacks any factual predicate.

The Third and Fourth Causes of Action should be dismissed for the additional reason that they appear duplicative of part of the First Cause of Action for breach of contract and, its alternative Second Cause of Action for quantum meruit. [*Compare* Compl. ¶ 145(b) (First Cause of Action) ("[ACAS] owes plaintiffs the following fees . . . (b) A . . . fee for the investments transferred from PROVIDENCE funds and from prospective investors in PROVIDENCE managed funds ('Lift-Out Fee')" *with* Compl. ¶¶ 160, 161 (Third Cause of Action) ("As a result of the Lift-Out Services performed by plaintiffs, investments managed by PROVIDENCE were transferred to [ACAS]" and "As a result of the Lift-Out Services performed by plaintiffs, investments previously being considered for management by PROVIDENCE were made in funds managed by [ACAS].")].

There simply is no writing alleged reflecting the Defendants' agreement to pay a "Lift Out" fee to either of the Plaintiffs, and thus the Third and Fourth Causes of Action should be dismissed with prejudice.

## V.    Vioni's Failure To Register As A Broker Under The Securities Exchange Act Of 1934 Renders Any Purported Agreement Void And Unenforceable For Illegality

An independent ground for dismissal of Plaintiffs' breach of contract claims exists insofar as Vioni seeks fees related to transactions in securities. One seeking such fees must be

registered as a "broker" in accordance within Section 15(a)(1) of Securities Exchange Act of 1934 ("Exchange Act").[6] Vioni concedes that she "may" have been required to register as a broker-dealer. [Compl., ¶ 132]. She was so required. As a result, even if Vioni were able to properly allege that a contract existed with any of the Defendants (and she cannot), such a contract would be unenforceable.

A.    Vioni Was A "Broker" Required To Register With The SEC.

The Exchange Act defines 'broker' as one "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). This definition is broad. *SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003). Vioni seeks from all Defendants, *inter alia*, (1) "Marketing Fees for the monies invested as a direct and indirect result of the transactions . . ."; (2) "A percentage of the management fees received by [ACAS] related to the Jeffrey Funds . . ."; and (3) "A percentage of the management fees received by [ACAS] related to the Jeffrey Funds, for each year until such funds are fully liquidated or redeemed." [Compl. ¶¶ 145(c)-(e), 186(b)-(d)]. Vioni seeks additional fees from ACAS for "the acquisition and hiring of the entire Providence Investment Team, and for the investments transferred from PROVIDENCE funds and from perspective investors in PROVIDENCE managed funds," [*id.* at 145(b)], and for the investment funds transferred from Providence to ACAS as part of the acquisition. [*Id.* at 154-69].

---

[6]    Section 15(a)(1) of the Securities Exchange Act ("Exchange Act") provides in relevant part: "It shall be unlawful for any broker or dealer which is . . . is a natural person not associated with a broker or dealer . . . to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered [with the Commission]." 15 U.S.C. § 78o(a)(1) (ellipses supplied).

18

If Vioni believes she is entitled to these transaction-based fees, she certainly must be a registered broker with the SEC. *See, e.g., SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984) (among the factors courts consider are "receiv[ing] commissions as opposed to salary;" "mak[ing] valuations as to the merits of the investment or gives advice," "is an active rather than passive finder of investors."); *SEC v. Margolin*, No. 92 Civ. 6307, 1992 WL 279735, at *5 (S.D.N.Y. Sept. 30, 1992) ("brokerage" conduct may include receiving transaction-based income and advertising for clients); John R. Wirthlin, SEC No-Action Ltr., 1999 WL 34898 (Jan. 19, 1999) (receiving transaction-based compensation is "one of the hallmarks of being a broker-dealer"); Joseph K. Bannon, C.P.A., SEC No-Action Ltr., 1988 WL 235393, at * 1 (Dec. 9, 1988) (the "direct or indirect receipt by [persons] who are not registered broker-dealers . . . of referral fees, finder's fees, commissions or any part thereof, or similar transaction-based compensation in connection with transactions in securities still would require these [persons] to register as broker-dealers with the Commission.") (ellipses supplied). As Vioni admits in the Complaint, however, she did not register as a broker-dealer with the SEC.

B.    Vioni's Purported Finder's Agreements With Defendants Would Be Void.

Vioni's failure to register as a broker-dealer renders void any purported agreement that she had with Defendants in which she allegedly was entitled to transaction-based fees. *Torsiello Capital Partners LLC v. Sunshine State Holding Corp.*, Index No. 600397/06 (Sup. Ct. N.Y. Co. April 1, 2008) (published in *New York Law Journal* on May 8, 2008, p. 26, col. 1), is on point. There, defendant holding company retained plaintiff, a financial advisory and investment bank services firm, to act as defendant's agent for private placement of its securities. *Id.* Plaintiff alleged that it was owed a commission on the sale of defendant (*i.e.* all of defendant's securities).

*Id.* The Court ruled that plaintiff's actions brought it within the Exchange Act's definition of a "broker," and that it was thus was required to register under Section 15(a) of the Exchange Act. *Id.* at Col. 4. Because plaintiff was not a registered broker, the agreement was "unenforceable under the common law doctrine of illegality." *Id.* at p. 27, col. 5.[7] The *Torsiello* court concluded, "where a performance under a contract by a non-registered broker would constitute a violation of the [Exchange Act's] registration provisions, the contract is unenforceable and may be rescinded." *Id.* (citing *Regional Props., Inc. v. Financial & Real Estate Consulting Co.*, 678 F.2d 552, 560 (5th Cir. 1982)).[8]

Vioni admits that she is not registered as a representative of a broker-dealer, nor was she so registered at the time the fees were allegedly due to her.[9] [Compl. ¶¶ 132-34]. Because Vioni is not a registered broker, she cannot recover any fees related to transactions in securities, and her claims with respect to recovering such fees should be dismissed with prejudice on this ground as well.

---

[7] The court also ruled that the contract was void *ab initio* and rescindable pursuant to Section 29(b) of the Exchange Act, which provides in relevant part: "[e]very contract made in violation of the [Exchange Act] . . . and every contract . . . the performance of which involves the violation of . . . any provision of the [Exchange Act] . . ., shall be void . . . ." 15 U.S.C. § 78cc(b).

[8] This principle applies not only to breach of contract claims, but to quantum meruit claims as well. *See Regional Props., Inc.*, 678 F.2d at 564 ("[P]ersons who perform services without obtaining a required occupational license have been denied recovery either on their contract or in quasi-contract.").

[9] Vioni's claim that she "did not register when it was clear that defendants would default in making payment for her services," gets her nowhere. Section 15(a) of the Exchange Act imposes strict liability for failure to register with the SEC. *See SEC v. Martino*, 255 F. Supp. 2d at 283 (S.D.N.Y. 2003).

## CONCLUSION

For the foregoing reasons, it is respectfully urged that the Court should dismiss the Complaint in its entirety, with prejudice.

Dated: New York, New York
June 24, 2008

**ARNOLD & PORTER LLP**

By: _____
      Stewart D. Aaron
      Erik C. Walsh
399 Park Avenue
New York, New York 10022
Telephone:    (212) 715-1000
Facsimile:    (212) 715-1399
stewart.aaron@aporter.com
erik.walsh@aporter.com

*Attorneys for Defendants*

21