Dated September 5, 2008

# UNITED STATES DISTRICT COURT

## FOR THE

## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------x
LISA VIONI and HEDGE CONNECTION INC.,

                Plaintiffs,

        v.

AMERICAN CAPITAL STRATEGIES, LTD.,
PROVIDENCE INVESTMENT MANAGEMENT, LLC,
PROVIDENCE INVESTMENT PARTNERS, LLC,        Case No. 08-cv-02950 (PAC)
And RUSSELL JEFFREY,

                Defendants.
------------------------------------x
```

## MEMORANDUM OF LAW IN OPPOSITION

### (Motion to Dismiss)

CAREY & ASSOCIATES LLC
521 Fifth Avenue, Suite 3300
New York, NY 10175-3399
Tel.: 212-758-0076
mqc@CareyLitigation.com

Attorneys for Plaintiffs

Of Counsel:
Peter C. Salerno

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................. II

  A.  CASES ....................................................... II

  B.  STATUTES .................................................... IV

  C.  OTHER AUTHORITIES ........................................... IV

PRELIMINARY STATEMENT .............................................. 1

STATEMENT OF FACTS ................................................. 1

ARGUMENT ........................................................... 2

POINT I ............................................................ 2

PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT STATES A CAUSE OF
ACTION ............................................................. 2

  A.  VIONI WAS THE PROCURING CAUSE OF THE TRANSACTIONS BETWEEN
     DEFENDANTS ................................................. 2

  B.  DEFENDANTS AGREED IN WRITING TO PAY VIONI FOR HER SERVICES ... 3

     1)  E-MAILS CONTAIN THE MATERIAL TERMS OF THE AGREEMENT ....... 3

     2)  E-MAILS SATISFIED THE STATUTE OF FRAUDS ................... 5

     3)  E-MAILS ESTABLISH THERE WAS A MEETING OF THE MINDS ........ 6

     4)  DEFENDANTS HAVE ANALYZED SELECT E-MAIL MESSAGES SOLELY
        IN THE LIGHT MOST FAVORABLE TO DEFENDANTS ............... 10

  C.  IF ANY ALLEGATION IS FOUND LACKING, THE MOTION TO DISMISS
     SHOULD BE DENIED SINCE DISCOVERY MAY SUPPLY THAT ELEMENT .... 15

POINT II ........................................................... 17

THE ALLEGATIONS OF THE COMPLAINT SUPPORT THE CAUSES OF ACTION
FOR A "LIFT-OUT" ................................................... 17

POINT III .......................................................... 18

VIONI HAS PROPERLY ALLEGED A CLAIM FOR QUANTUM MERUIT .............. 18

POINT IV ........................................................... 20

VIONI WAS NOT REQUIRED TO REGISTER AS A BROKER ..................... 20

POINT V ............................................................ 23

THE MOTION TO DISMISS THE PROMISSORY ESTOPPEL CLAIM IS PREMATURE ... 23

CONCLUSION ......................................................... 25

# TABLE OF AUTHORITIES

**A.    CASES**

AL-BAWABA V. NSTEIN, 19 MISC.3D 1125(A), 3, 2008 WL 1869751
        (SUP.CT. KINGS CTY. 4/25/08) .............................. 15

ATHLETES AND ARTISTS, INC. V. MILLEN, 1999 WL 587883 *6
        (S.D.N.Y. 1999) ............................................ 5

BAZAK INTERNATIONAL CORP. V. TARRANT APPAREL GROUP, 378
        F.SUPP.2D 377 (S.D.N.Y. 2005) ............................ 6,7

BELL ATLANTIC CORPORATION V. TWOMBLY, 127 S.CT. 1955, 167
        L.ED.2D 929 (2007) .................................... 7-10,16

BELOTZ V. JEFFRIES & CO., 1999 WL 587916 (S.D.N.Y. 1999) ........ 23

BIBEAULT V. ADVANCED HEALTH CORP., 1999 WL 301691 (S.D.N.Y.
        1999) ..................................................... 23

BRONNER V. PARK PLACE ENTERTAINMENT CORP., 137 F.SUPP. 306
        (S.D.N.Y. 2001) ........................................ 5,5N3

CBS, INC. V. AHERN, 108 F.R.D. 14 (S.D.N.Y. 1985) ............... 24

CORNHUSKER ENERGY LEXINGTON, LLC V. PROSPECT ST. VENTURES, NO.
        8:04CV586, 2006 U.S. DIST. LEXIS 68959 [2006 WL 2620985]
        (D. NEB. SEPT. 12, 2006) ................................. 21

DAVIS & MAMBER, LTD. V. ADRIENNE VITTADINI, INC., 212 A.D.2D
        424, 622 N.Y.S.2D 706 (A.D. 1ST DEPT. 1995) ........... 19,20N7

DAY V. DWORMAN, 18 A.D.2D 989, 238 N.Y.S.2D 529 (1ST DEPT. 1963) ... 8

EDWARD GOTTLIEB, INC. V. CITY AND COMMERCIAL COMMUNICATIONS
        PLC, 200 A.D.2D 395, 606 N.Y.S.2D 148, (1ST DEPT. 1994) ...... 3

EXPRESS INDUS. & TERMINAL CORP. V. NEW YORK STATE DOT, 93
        N.Y.2D 584, 693 N.Y.S.2D 857 (1999) ...................... 4

FOUR FINGER ART FACTORY, INC., 2000 WL 145466 *8 (S.D.N.Y.
        2000) ..................................................... 23

GOTTESMAN COMPANY V. KEYSTONE ENTERPRISES, INC., 841 N.Y.S.2D
        540 (A.D. 1ST DEPT. 2007) ................................. 19

G.T.FLAMMIA V. MITE CORPORATION, 401 F.SUPP. 1121 (E.D.N.Y.
        1975) ...................................................... 6

HUTNER V. GREENE, 734 F.2D 896 (2D CIR. 1984) .................. 21

INTERNATIONAL TRADING AND SALES V. PHILIPP BROTHERS, INC., 99
        A.D.2D 983, 468 N.Y.S.2D 123 (1ST DEPT. 1984) .............. 16

IQBAL V. HASTY, 490 F.3D 143 (2D CIR. 2007) .................... 7,8

KIM V. UNITED YOUNG ARTIST FOUNDATION, INC., 19 MISC.3D 133,
    *1, 2008 WL 879747 (APP. TERM, 1ST DEPT., APRIL 2, 2008) ..... 6

LEATHERMAN V. TARRANT COUNTY NARCOTICS INTELLIGENCE AND
    COORDINATION UNIT, 507 U.S. 163, 113 S.CT. 1160, 122
    L.ED.2D 517 (1993) .......................................... 8

MARCELLA V. ARP FILMS, INC., 778 F.2D 112 (2D CIR. 1985) ...... 17,18

MEREX A.G. V. FAIRCHILD WESTON SYSTEMS, INC., 810 F.SUPP. 1356
    (S.D.N.Y. 1993), AFF'D, 29 F.3D 821 (2D CIR. 1994) ......... 25

MOORE V SUTTON RESOURCES, LTD., 1998 WL 67664, *4 (S.D.N.Y.
    1998) ................................................... 2N2,3

MORRIS COHON & COMPANY V. RUSSELL, 23 N.Y.2D 569, 297 N.Y.S.2D
    947, 245 N.E.2D 712 (1969) .......................... 5,9,17-19

MURPHY V. GABELLI, 1994 WL 560982 *6 (S.D.N.Y. 1994) ......... 17,19

NORTH AMERICAN KNITTING MILLS, INC. V. INTERNATIONAL WOMEN'S
    APPARREL, INC., 2000 WL 120608 *3 (S.D.N.Y. 2000) .......... 24

NORTHEAST GENERAL CORP. V. WELLINGTON ADVER., INC., 82 N.Y.2D
    158, 604 N.Y.S.2D 1 (1993) ................................. 2N2

PHILO SMITH & CO., INC. V. USLIFE CORP., 554 F.2D 34 (2D CIR.
    1977) ...................................................... 24

SALAMON V. CIRTRAN CORP., NO. 2:03-CV-787, 2005 U.S. DIST.
    LEXIS 31332 [2005 WL 3132343] (D. UTAH NOV. 22, 2005) ....... 21

SEC V. HANSEN, NO. 83 CIV. 3692 *3 [1984 WL 2413], 1984 U.S.
    DIST. LEXIS 17835 (S.D.N.Y. APRIL 6, 1984) .................. 22

SEC V. MARGOLIN, NO. 92 CIV. 6307 [1992 WL 279735], 1992 U.S.
    DIST. LEXIS 14872 *15-16 (S.D.N.Y. SEPT. 30, 1992) ......... 22

SEC V. MARTINO, 255 F. SUPP.2D 268 (S.D.N.Y. 2003) .............. 22

SIMON V. ELECTROSPACE CORP., 28 N.Y.2D 136, 320 N.Y.S.2D 225
    (1971) .................................................. 3,4,9

SPRINGWELL CORP. V. FALCON DRILLING COMPANY, INC., 16 F.SUPP.2D
    300 (S.D.N.Y. 1998) .......................... 6,16,17,19,20N7

STERLING INTERIORS GROUP, INC., 1996 WL 426379 *22 (S.D.N.Y.
    1996) ...................................................... 24

SUGERMAN V. MCY MUSIC WORLD, INC., 158 F.SUPP.2D 316 (S.D.N.Y.
    2001) ............................................... 4,20N7,23

WALKER V KNOWLES, 15 MISC.3D 1124(A),*3, 841 N.Y.S.2D 222
    (SUP.CT., N.Y.CTY. 2007) ................................... 16

WOOLLEY V. STEWART, 222 N.Y. 347, 118 N.E. 847 (1918) ........... 25

**B.   STATUTES**

15 U.S.C. § 78O(A)(1) ...................................... 20,20N8

15 U.S.C. § 78C(A)(4)(A) ..................................... 20N8

RULE 8(A)(2), FEDERAL RULES OF CIVIL PROCEDURE .................. 6,8

RULE 8(D)(2), FEDERAL RULES OF CIVIL PROCEDURE .................. 18

RULE 8(E), FEDERAL RULES OF CIVIL PROCEDURE ..................... 7

SECTION 5-701(B)(4), GENERAL OBLIGATIONS LAW ..................... 5

**C.   OTHER AUTHORITIES**

CAPLIN & DRYSDALE, CHARTERED, SEC NO-ACTION LETTER, 1982 SEC
     NO-ACT. LEXIS 2291 (APRIL 8, 1982) .......................... 22

GARRETT/KUSHELL/ASSOCS., SEC NO-ACTION LETTER, 1980 SEC NO-ACT.
     LEXIS 3744 (SEP. 7, 1980) ................................... 21

INTERNATIONAL BUSINESS EXCHANGE CORPORATION, SEC NO-ACTION
     LETTER, 1986 SEC NO-ACT. LEXIS 3065 (DECEMBER 12, 1986) ..... 22

JOHN R. WIRTHLIN, SEC NO-ACTION LETTER, [1999 WL 34898], 1999
     SEC NO-ACT. LEXIS 83 (JANUARY 19, 1999) .................. 22,23

JOSEPH K. BANNON, CPA, SEC NO-ACTION LETTER, 1988 SEC NO-ACT.
     LEXIS 1756 (DECEMBER 9, 1988) ............................... 23

NASD NOTICE TO MEMBERS 97-11 (MAR. 1987) ..................... 23N10

PAUL ANKA, SEC NO-ACTION LETTER, 1991 SEC NO-ACT. LEXIS 925
     (JULY 24, 1991) ............................................. 22

TRAIGER ENERGY INVESTMENTS, 48 S.E.C. 930, 1988 SEC LEXIS 151
     (FEBRUARY 3, 1988) .......................................... 21

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum in opposition to defendants' motion to dismiss, with prejudice, the Amended Complaint.[1]

## STATEMENT OF FACTS

Independent of each other, before any introductions were made, Russell Jeffrey ("**JEFFREY**") and American Capital Strategies, Ltd., ("**CAPITAL**") hired Lisa Vioni and Hedge Connection, Inc. (collectively "**Vioni**") to make introductions to advance their businesses.

From October 2006 through September 2007, Vioni worked with Robert Grunewald of CAPITAL and with JEFFREY to introduce each of them and their companies to the other. During that time, the parties entered into a written agreement to pay Vioni a Finder's Fee.

Vioni was solely responsible for enabling the acquisition by CAPITAL of JEFFREY, and of Providence Investment Management, LLC and Providence Investment Partners, LLC (collectively "**PROVIDENCE**") and their employees. Defendants did not pay Vioni.

---

[1]    Citations preceded by "**AC**" refer to the Amended Complaint, dated July 20, 2008.
    Citations preceded by "**AD**" refer to the declaration of Stewart D. Aaron, Esq., executed June 24, 2008.
    Citations preceded by "**Cap Memo**" refer to the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, dated June 24, 2008.
    Citations preceded by "**Cap Memo 2**" refer to the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, dated July 28, 2008.

**ARGUMENT**

**POINT I**

**PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT
STATES A CAUSE OF ACTION**

**A.    VIONI WAS THE PROCURING CAUSE OF THE TRANSACTIONS BETWEEN
DEFENDANTS**

Vioni has sued defendants, on different theories, solely for failing to pay Vioni for services to defendants as a "Finder."[2]

In April 2007, months after defendants initially approached Vioni, JEFFREY and CAPITAL asked Vioni in writing to introduce the one to the other. (AC ¶¶ 61-62). JEFFREY's goals were to meet investors to expand the business of PROVIDENCE and to attract additional resources. (AC ¶ 57). CAPITAL's goal was to expand its financial services, to invest in hedge funds for sale to the public. (AC ¶¶ 52-55).

Vioni made the introductions. (AC ¶¶ 59-73,76,77,84). After a meeting between JEFFREY and Grunewald in New York City on April 18 (AC ¶ 64), CAPITAL e-mailed Vioni asking her to determine the pay package that JEFFREY expected. (AC ¶ 74).

Vioni was solely responsible for making introductions of CAPITAL to JEFFREY and PROVIDENCE. (AC ¶ 61-62). Following the introductions, CAPITAL, PROVIDENCE and JEFFREY agreed that

---

[2]    A "Finder" is a person "who finds, interests, introduces and brings parties together for a business transaction that the parties themselves negotiate and consummate." Moore v Sutton Resources, Ltd., 1998 WL 67664, *4 (S.D.N.Y. 1998), citing Northeast General Corp. v. Wellington Adver., Inc., 82 N.Y.2d 158, 163, 604 N.Y.S.2d 1 (1993).

CAPITAL would, and it did, acquire all the operations, assets and employees of PROVIDENCE. (AC ¶¶ 69, 94, 104, 137, 138). As the sole procuring cause of such transactions (e.g. AC ¶¶ 61-62) Vioni is entitled to recover under the Finder's agreement. Simon v. Electrospace Corp., 28 N.Y.2d 136, 142, 320 N.Y.S.2d 225, 229 (1971); Moore v Sutton Resources, Ltd., 1998 WL 67664, 4 (S.D.N.Y. 1998)(citing Simon, 28 N.Y.2d at 142; Edward Gottlieb, Inc. v. City and Commercial Communications PLC, 200 A.D.2d 395, 399, 606 N.Y.S.2d 148, 150 (1st Dept. 1994).

**B. DEFENDANTS AGREED IN WRITING TO PAY VIONI FOR HER SERVICES**

**1) E-mails contain the material terms of the agreement**

As a result of Vioni's efforts, on April 4, 2007, Jeffrey wrote that he wanted Vioni to introduce him and PROVIDENCE to CAPITAL. (AC ¶¶ 61). Grunewald also wrote on April 4 and 9, 2007, that he wanted Vioni to introduce him to a specialist in managing investments in mortgage-backed securities.  (AC ¶ 62). Jeffrey and PIM specialized in managing mortgage-backed securities. (AC ¶ 35, 44).

Defendants understood that Vioni expected to be paid for her services and they agreed to pay her. CAPITAL directly acknowledged its agreement to make payment for Vioni's services in exchanges with Vioni (AC ¶¶ 66, 70 (e-mail), 71, 75 (e-mail), 90 (e-mail), 91, 92 (e-mail), 93). It also acknowledged its obligation indirectly through JEFFREY (89, 99).

JEFFREY also knew that Vioni expected payment for her services and he agreed to pay her: (AC ¶¶ 67-68 (e-mail), 82-83(e-mail), 86(e-mail), 88, 95, and 99).

Between October 2006 and September 2007, CAPITAL, JEFFREY and PROVIDENCE contracted with Vioni in writing to compensate her for her efforts in introducing each to the other for the purpose of furthering their goals. (AC ¶¶ 57-58). Defendants specified in writing that the form of payment owed to Vioni was to be determined by reference to the final structure of the deal, as set forth in the ACSL Transactions documents (defined in the Amended Complaint ¶ 79) (**"Deal Structure"**). (AC: ¶¶ 67-68,70,75,82-83,85,92; CAPITAL ¶¶ 142,145; JEFFREY 183,186) (AD Exs C,D,E,F,G). (The agreement, tied to the Deal Structure, is referred to as the **"Fee Agreement"**).

An agreement that provides the manner to tell how to establish the amount of payment does not violate the Statute of Frauds. See Express Indus. & Terminal Corp. v. New York State DOT, 93 N.Y.2d 584, 589-90, 693 N.Y.S.2d 857, 860 (1999); Sugerman v. MCY Music World, Inc., 158 F.Supp.2d 316, 324-325 (S.D.N.Y. 2001)(Citations omitted). Moreover, any change in the form of the final transactions would not preclude Vioni's recovery of a commission. Simon, 28 N.Y.2d at 141, 320 N.Y.S.2d at 229.

- 4 -

**2)     E-mails satisfied the Statute of Frauds**

To satisfy the statute of frauds, a writing must contain expressly or by reasonable implication all material terms of the agreement. <u>Morris Cohon & Company v. Russell</u>, 23 N.Y.2d 569, 575, 297 N.Y.S.2d 947, 953, 245 N.E.2d 712, 715 (1969); <u>accord Athletes and Artists, Inc. v. Millen</u>, 1999 WL 587883 *6 (S.D.N.Y. 1999)(quoting <u>Morris Cohon</u>). The e-mails and other documents alleged by Vioni meet this test.

The Statute of Frauds requires that a finder's fee agreement must be "'subscribed by the party to be charged.' N.Y.G.O.L. § 5-701(a)." (Cap Memo p 6). There is no "traditional written agreement" with Vioni signed by any defendant. (Cap Memo p 6-7). Vioni has alleged a written agreement to pay her a finder's fee based on a series of e-mails. (Cap Memo p 6).

Plaintiffs' allegations do not create a "significant potential for mischief." <u>Bronner v. Park Place Entertainment Corp.</u>, 137 F.Supp. 306, 311 (S.D.N.Y. 2001).[3]

Section 5-701(b)(4), General Obligations Law, expressly permits plaintiffs to use computer-generated documents to satisfy the Statute of Frauds:

> [T]he tangible written text produced by
> … computer retrieval or other process
> by which electronic signals are

---

[3]     Defendants misplace reliance on <u>Bronner.</u> (Cap Memo p 4-6, 12-14). In <u>Bronner</u>, plaintiff relied solely on an oral agreement; there was no written document.

> transmitted by telephone or otherwise
> shall constitute a writing and any
> symbol executed or adopted by a party
> with the present intention to
> authenticate a writing shall constitute
> a signing.

The material terms of the agreement need not be contained in a single document. The agreement may be established by a combination of signed and unsigned "writings", including e-mail. See Bazak International Corp. v. Tarrant Apparel Group, 378 F.Supp.2d 377, 383-84 (S.D.N.Y. 2005)(re parallel clause in NY UCC); Springwell Corp. v. Falcon Drilling Company, Inc., 16 F.Supp.2d 300, 303 (S.D.N.Y. 1998)(Citations omitted); G.T.Flammia v. Mite Corporation, 401 F.Supp. 1121, 1133 (E.D.N.Y. 1975)(Citations omitted); Kim v. United Young Artist Foundation, Inc., 19 Misc.3d 133, *1, 2008 WL 879747 (App. Term, 1st Dept., April 2, 2008)(*Per Curiam*).

**3)  E-mails Establish There Was A Meeting Of The Minds**

Defendants move to dismiss the Amended Complaint principally on the basis that it does not allege a written agreement that shows there was a meeting of the minds on paying Vioni. (Cap Memo p 7,8,13). This argument is contradicted by Vioni's allegations regarding payment.

> a)    Defendants Have Ignored The Standard To Measure
>        Pleadings On A Motion To Dismiss

Vioni's claims contain a short and plain statement showing that plaintiffs are entitled to relief. Rule 8(a)(2), Federal

- 6 -

Rules of Civil Procedure ("**F.R.Civ.P.**"); <u>Bell Atlantic</u>
<u>Corporation v. Twombly</u>, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929,
__ (2007), and the Amended Complaint must be construed so as to
do justice. Rule 8(e), F.R.Civ.P.

Read in the light most favorable to Vioni, the Amended
Complaint alleges a written agreement to pay Vioni sufficient to
satisfy the Statute of Frauds. Such allegations are assumed to
be true on a motion to dismiss. <u>See Iqbal v. Hasty</u>, 490 F.3d
143, 147 (2d Cir. 2007).

Defendants claim no writing demonstrates any defendant
assented to the detailed and substantial fees sought by Vioni.
(Cap Memo p 13). While there may not be a single writing that
outlines Vioni's fees, the many e-mail sufficiently allege
defendants' assent to the fees sought by Vioni. Defendants'
unsupported denial of assent presents factual questions that
must be submitted to a jury. <u>Bazak</u>, 378 F.Supp.2d at 382.

Vioni has no obligation to <u>prove</u> at this stage that an
agreement was made with defendants. She has to allege merely
"enough factual matter (taken as true) to suggest that an
agreement was made." <u>See Bell Atlantic</u>, 127 S.Ct. at 1965;
<u>accord Iqbal</u>, 490 F.3d at 155. Vioni's conclusions, based on a
series of e-mail exchanges, are sufficient to allege her claim,
because they give defendants notice of the date, time and place
where the actions occurred that formed the written agreement to

pay her. <u>See Iqbal</u>, 490 F.3d at 156, and provide defendants fair notice of what her claim is and the grounds upon which it rests. <u>See Bell Atlantic</u>, 127 S.Ct. at 1964; <u>Iqbal</u>, 490 F.3d at 157 (citations omitted). The allegations of the Amended Complaint take Vioni's claims far above the speculative level. <u>See Bell Atlantic</u>, 127 S.Ct. at 1965.

Even if Vioni's claims had no merit in fact, defendants must rely on summary judgment. A motion to dismiss is not the means to "weed out unmeritorious claims…." <u>Iqbal</u>, 490 F.3d at 157 (citing <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

    b)   <u>There Was A Meeting Of The Minds To Pay Vioni</u>

Vioni alleged more than needed to satisfy Rule 8(a)(2). Vioni alleged separate written agreements with CAPITAL and with JEFFREY to pay her for her services as a finder. (AC ¶¶ 57-58). The allegations of paragraphs 57 and 58 alone are adequate to survive a motion to dismiss a claim for breach of a Finder's Fee agreement. <u>Day v. Dworman</u>, 18 A.D.2d 989-90, 238 N.Y.S.2d 529-30 (1st Dept. 1963) (per curiam) (plaintiff must merely plead an agreement to pay the fee)(motion to dismiss granted with leave to replead).

Even if Vioni's allegations were merely conclusory, Vioni made additional allegations, as indicated above, that expressly

identify the written agreement, and others that alleged a basis to infer that agreement. Cf. Bell Atlantic, 127 S.Ct. at 1966; Morris Cohon, 23 N.Y.2d at 575, 297 N.Y.S.2d at 953, 245 N.E.2d at 715.

On May 7, 2007, the CAPITAL Investment Committee had favorably examined the proposal to enter into the ACSL Transactions. (AC ¶ 80). JEFFREY informed Vioni by e-mail that he was told, on May 31, he had a deal with CAPITAL. (AC ¶ 85). In June, Grunewald told Vioni that CAPITAL was examining how to calculate the Finder Fees that will be owed to Vioni ("**Fee Exam**"). (AC ¶ 91). CAPITAL would not have conducted the Fee Exam unless it had a meeting of the minds to pay Vioni. And defendants' decision to exclude Vioni from learning the Deal Structure so the precise form of payment could be determined (AC ¶ 70,75,83 JEFFREY, 207 Grunewald), does not defeat her claim based on the Fee Agreement. Interference with the opportunity of Vioni to complete her services does not bar her right to commissions. See Simon, 28 N.Y.2d at 142, 320 N.Y.S.2d at 230. In a contract action, the test to meet the Statute of Frauds is satisfied even if it does not contain the rate of compensation, where there has not been agreement on that matter. Morris Cohon, 23 N.Y.2d at 575, 297 N.Y.S.2d at 953, 245 N.E.2d at 715.

Vioni's allegations are ample to meet her burden to give defendants notice of a plausible claim for breach of the Fee

Agreement, and the Court should deny defendants' motion, even in the unlikely event that the Court thought actual proof of the facts alleged was improbable or that Vioni's recovery was very unlikely. <u>See Bell Atlantic</u>, 127 S.Ct. at 1965.

### 4) Defendants Have Analyzed Select E-Mail Messages Solely In The Light Most Favorable To Defendants

Without the support of an affidavit from any defendant, and in disregard of the standard that the allegations in the Amended Complaint are to be accepted as true by the Court on a motion to dismiss, defendants take issue with a few of the e-mails cited in the Amended Complaint, arguing that they constitute the "outright" rejection of plaintiffs' allegations that the e-mails constitute a Finder's Fee agreement. (Cap Memo p 8-12). As noted above, the allegation, not the proven content of the e-mail is the standard. Nevertheless, defendants have misunderstood the e-mails.

### a.  April 19, 2007 E-mails

On April 19, 2007, Vioni and JEFFREY confirmed JEFFREY's oral statement that Vioni should be paid for the introduction to CAPITAL and in relation to monies invested in funds managed by Jeffrey calculated on the future growth of the funds. (AC ¶ 67-68; AD Ex C). Defendants claim JEFFREY "confirmed no such thing." (Cap Memo p 8-9).

Defendants challenge the allegations based on the reference to "various engagement letters." (Cap Memo p 8). Vioni never

-10-

alleged an "engagement letter" existed regarding this matter.

Vioni expressed a desire "to get a little more specific as soon as we can with how the deal between you and me will work." (Cap Memo p 9). This exchange of e-mails not only confirms the Fee Agreement to pay Vioni but also that defendants agreed the form of the payment would be based on the Deal Structure.

      b.  <u>April 20, 2007 E-Mail</u>

On April 20, 2007, Grunewald informed Vioni that she would be paid by ACAS for her services with the details of the form of payment dependent on the final structure of the ACSL Transactions. (AD Ex D; AC ¶ 70).[4]

The Subject line on each of the two e-mails stated "Structure question." Vioni's e-mail expressly refers to the Finder's Fee payment from JEFFREY for the transaction that folded PROVIDENCE into CAPITAL. Vioni then inquired about a fee from CAPITAL based on the "growth of the [CAPITAL] business." Vioni described this as a fee to ensure that she would be paid something each year as the company grew. (AD Ex D).

In his response, Grunewald stated:

> I think the only realistic way to work
> out a fee arrangement would be as a
> straight advisory fee or a commitment
> on our part to use you for a bigger

---

[4]    Defendants said they could not locate an e-mail dated April 20, but found the same message in one dated April 19. Defendants allege Grunewald responded at 8:09 p.m. that day to an e-mail from Vioni. (Cap Memo p 9). Vioni did not receive it until the following morning, April 20.

opportunity than would have otherwise
existed. (AD Ex D).

In the light most favorable to Vioni, Grunewald's e-mail
was, as alleged, confirmation that Vioni would be paid by
CAPITAL, and that the form of payment was dependent on the Deal
Structure. (AC ¶ 70). Grunewald's e-mail was not a counteroffer.
Vioni alleged that there already was agreement by JEFFREY and
CAPITAL to pay for her services, as specified in the Fee
Agreement. How otherwise should Vioni have interpreted
Grunewald's advice on June 25, approximately 8 weeks later, that
CAPITAL was examining the Finder Fees that will be owed to
Vioni." (AC ¶ 91).

### c.   April 23, 2007 E-Mail

On April 23, Grunewald repeated Vioni would be paid in a
form dictated by the Deal Structure. (AC ¶ 75; AD Ex E).

Grunewald responded to an e-mail from Vioni that attached a
proposed marketing agreement. (Cap Memo p 10). In addition to
acting as a "Finder", Vioni was involved in proposing that she
and Walter Kirkland ("**Vioni-Kirkland**") would, in the future,
market various financial products of CAPITAL to the public.
("**Marketing Proposal**"). (AD Ex E). CAPITAL never accepted the
Marketing Proposal as a final agreement with Vioni-Kirkland and
it is not a subject of the Amended Complaint.

In dismissing the Marketing Proposal as something he needed

to "tweek", Grunewald confirmed he had a higher priority, the
need to first resolve the "Providence" transactions introduced
by Vioni. Grunewald did not state there was anything to "tweek"
about the existing Fee Agreement. CAPITAL's Investment Committee
did not consider the acquisition favorably until two weeks
later, on May 7 (AC ¶ 80) and CAPITAL apparently did not settle
the structure of the proposed deal with JEFFREY until after May
31 (AC ¶ 85).

     d.   <u>May 14, 2007 E-Mails</u>

On May 14, 2007, Vioni and JEFFREY wrote that she would be
paid, and that payment would be dependent on the final structure
of the ACSL Transactions. (AC ¶¶ 82-83).

Defendants question a reference to a discussion in the e-
mail of another source of future business with CAPITAL that
might require formation of a broker-dealer. (Cap Memo p 11). (AD
Ex F). The Finder's Fee and that broker-dealer matter are
distinct subjects.

In her response to JEFFREY, two weeks before JEFFREY
reported he had a deal with CAPITAL, and approximately five
weeks before Grunewald told Vioni CAPITAL was examining how to
calculate the Finder Fees owed to Vioni (AC ¶ 91), Vioni stated
"You have asked me if I want to start outlining details of how I
get compensated for the [CAPITAL] deal and the new credit fund
etc." (AD Ex F). Vioni's statement was consistent with the Fee

-13-

Agreement, with the form of payment controlled by the Deal Structure. Vioni did not indicate that JEFFREY had asked her if she expected to be paid. Vioni's response did not ask "if" she will be compensated. Contemplating a single document that formally captured the full details of their agreement, in the absence of which Vioni has been compelled by defendants to rely on other written documents, the e-mail refers expressly to "outlining <u>details</u> of <u>how</u> [Vioni] get[s] compensated for the [CAPITAL] deal and the new credit fund", expressly making reference to the unknown terms of the Deal Structure.(AD Ex F)(Emphasis added).

> ### e.   July 17, 2007 E-Mails

On July 17 (AD Ex G), Grunewald stated a) Vioni introduced the employees of Providence and b) CAPITAL paid fees for recruiting employees. (AC ¶ 92 a, b).[5]

Grunewald's statements in the negative can be and were alleged affirmatively. In their original negative format: [b] "ACAS does not pay fees other than those for a retained search for the [a] introduction of employees." (AD Ex G). Expressed as an affirmative statement: ACAS does pay fees for a retained search for the introduction of employees. (AC ¶ 92 b). Grunewald

---

[5]     Defendants' copy of the e-mail dated July 17 is attached as Exhibit A to the declaration of Michael Q. Carey, executed September 5, 2008. The e-mail has been annotated to add a letter to identify phrases in the e-mail. The same identifiers are used in paragraph 92 of the Amended Complaint and in this memo for the convenience of the reader.

retained Vioni to make introductions and Vioni introduced the
entire staff of PROVIDENCE. Grunewald conceded that Vioni
introduced JEFFREY to CAPITAL (AC ¶ 92 c) and there is no
question that CAPITAL hired the entire staff of PROVIDENCE. (AC
¶ 104-05, 107).

Defendants' conclusion that the e-mail rejects Vioni's
fees, and offers a counterproposal, ignores the standard that
Vioni's allegations must be read as true.

## C.    IF ANY ALLEGATION IS FOUND LACKING, THE MOTION TO DISMISS SHOULD BE DENIED SINCE DISCOVERY MAY SUPPLY THAT ELEMENT

Vioni has expressly alleged that defendants entered into a
written agreement o compensate her as a Finder on completion of
the ACSL Transactions. Vioni also alleged that CAPITAL examined
how the payment to Vioni would be calculated (AC ¶ 91) but
refused to give Vioni a copy of the transaction documents. (AC ¶
127,129).

Vioni is entitled to discovery; she has alleged conduct by
defendants that indicates an agreement was reached. In the
absence of any affidavit denying the Fee Agreement exists, the
series of e-mails regarding the agreement, and the fee
examination by CAPITAL, exceeds the threshold of "mere
speculation" and suggests that defendants may have internal
documents containing relevant terms of the agreement sufficient
to satisfy the Statute of Frauds. See Al-Bawaba v. Nstein, 19
Misc.3d 1125(A), 3, 2008 WL 1869751 (Sup.Ct. Kings Cty.

-15-

4/25/08).

Vioni has no obligation to prove probability. The allegations are sufficient to "raise a reasonable expectation that discovery will reveal evidence…" that the written agreement included a promise to pay Vioni. <u>See Bell Atlantic</u>, 127 S.Ct. at 1965; <u>cf</u>. <u>Walker v Knowles</u>, 15 Misc.3d 1124(A),*3, 841 N.Y.S.2d 222 (Sup.Ct., N.Y.Cty. 2007).

Even where plaintiff has no writing to support his claim, and defendant denies any writing exists, where it might exist and might satisfy the Statute of Frauds, discovery is warranted where the facts regarding the existence of such writing are peculiarly within the knowledge of defendants, as they are here. <u>International Trading and Sales v. Philipp Brothers, Inc.</u>, 99 A.D.2d 983, 984, 468 N.Y.S.2d 123, 125 (1st Dept. 1984)(Appellate Division reversed the grant of motion to dismiss); <u>cf. Springwell</u>, 16 F.Supp.2d at 303.

Defendants, buyer and seller, are represented in this action by the same law firm. JEFFREY was frequently in contact with Vioni over payment of the fees for her services as a Finder. In discovery, Vioni expects to obtain the ACSL Transactions documents that have been withheld. If any one of those documents includes an agreement for CAPITAL to indemnify JEFFREY against any claims related to the transactions, including any by Vioni, such a clause may establish that JEFFREY

and CAPITAL was each obligated to pay Vioni for her services. See Morris Cohon, 23 N.Y.2d at 575, 297 N.Y.S.2d at 952-53, 245 N.E.2d at 715.

Testimony, as well as documents, obtained in discovery can also take this case out of the Statute of Frauds. See Marcella v. ARP Films, Inc., 778 F.2d 112, 116 (2d Cir. 1985); Springwell, 16 F.Supp.2d at 315; Murphy v. Gabelli, 1994 WL 560982 *6 (S.D.N.Y. 1994).

## POINT II

### THE ALLEGATIONS OF THE COMPLAINT SUPPORT THE CAUSES OF ACTION FOR A "LIFT-OUT"

Defendants argue that Vioni has not alleged any facts to support a claim for breach of a "lift-out" contract in the Third and Fourth causes of action. (Cap Memo p 16-17).[6]

Certain specified transactions with JEFFREY and PROVIDENCE, by themselves, constituted a "Lift-Out." The Amended Complaint alleges transactions that enabled CAPITAL to acquire not simply a few employees but an entire experienced operating department that had a track record for competence in trading sophisticated mortgage-backed securities. ("**Lift-Out**"). (E.g. AC ¶¶ 104-115, 116-120, 125-26, 138a). That transaction permitted CAPITAL immediately to market the expertise of PROVIDENCE  to raise $400

---

[6]     Defendants also argue Vioni's claim in quantum meruit lacks any factual predicate and is barred by the Statute of Frauds. (Cap Memo p 15 n 5). For the reasons set forth in this Point I A-C, defendants' motion to dismiss should be denied.

-17-

million for a REIT. (AC ¶ 138 d-i).

Amended Complaint paragraphs 160 and 161 allege that through the Lift-Out, CAPITAL received monies previously managed by Providence as well as investments that otherwise were earmarked for management by PROVIDENCE.

Defendants observe the Third and Fourth causes of action appear duplicative. (Cap Memo p 17). Those causes are pled in the alternative. Rule 8(d)(2), F.R.Civ.P.

Defendants argue there was no written agreement to pay a "Lift-Out" fee. (Cap Memo p 15 n5, 17). Vioni alleged the Lift-Out agreement was a written agreement to pay industry standard fees. (AC ¶¶ 57, 138a, 154, 159, 162).

### POINT III

### VIONI HAS PROPERLY ALLEGED A CLAIM FOR QUANTUM MERUIT

In a suit based on Quantum Meruit, for reasonable value of finder services, if there were no agreement on the rate of compensation, a memo need only evidence the fact of plaintiffs' employment by defendants to render the alleged services. The obligation of defendants to pay reasonable compensation for the services is then implied. Morris Cohon, 23 N.Y.2d at 575-76, 297 N.Y.S.2d at 952, 245 N.E.2d at 716; accord Marcella, 778 F.2d at 117.

> The Statute of Frauds was not enacted
> to afford persons a means of evading
> just obligations; nor was it intended

-18-

> to supply a cloak of immunity to
> hedging litigants …; nor was it adopted
> to enable defendants to interpose the
> Statute as a bar to a contract fairly
> and admittedly made. (4 Williston,
> Contracts (3d ed.). s 567A, pp.19-20).

Morris Cohon, 23 N.Y.2d at 574, 297 N.Y.S.2d at 952, 245 N.E.2d at 715.

When the e-mails are read as a whole, and by reasonable construction and necessary implication, the language used establishes that defendants are obligated to pay Vioni for her services. Such writings satisfy the Statute of Frauds. See Morris Cohon, 23 N.Y.2d at 575-576, 297 N.Y.S.2d at 952-53, 245 N.E.2d at 715-716; Springwell, 16 F.Supp.2d at 313-14; Murphy, 1994 WL 560982 *7.

Defendants' acknowledgment that Vioni performed the services satisfied the Statute of Frauds and entitles her to prove and recover the reasonable value of her services on a theory of quantum meruit. Gottesman Company v. Keystone Enterprises, Inc., 841 N.Y.S.2d 540, at HN 1,2 (A.D. 1st Dept. 2007); Davis & Mamber, Ltd. v. Adrienne Vittadini, Inc., 212 A.D.2d 424-25, 622 N.Y.S.2d 706-07 (A.D. 1st Dept. 1995). There is no basis to conclude from the writings that the Fee Agreement contemplated gratuitous services. Davis, 212 A.D.2d at 425, 622

N.Y.S.2d at 707.[7]

## POINT IV

### VIONI WAS NOT REQUIRED TO REGISTER AS A BROKER

Defendants move to dismiss the Amended Complaint because Vioni admits she was not a registered securities broker when she worked to introduce defendants. However, Vioni has not alleged anything to suggest she seeks fees in relation to a securities transaction. Their claim that Vioni had to be registered is based solely on circular speculation that Vioni had to be registered: "insofar as Vioni seeks fees related to transactions in securities" (Cap Memo p 17), i.e. only if she had to be registered.

Finders are not required to register as brokers under Section 15(a)(1) of the Securities Exchange Act of 1934. 15 U.S.C. § 78o(a)(1)("the 1934 Act").[8] A Finder "'finds, interests, introduces and brings the parties together for the deal which they themselves negotiate and consummate,'". (AC ¶¶

---

[7]     Three cases cited by defendants are not controlling (Cap Memo p 15-16): a) Klein v. Smigel: since plaintiff lacked a memo like those authorizing Vioni to approach each defendant. Davis & Mamber, Ltd., 212 A.D.2d at 425-26, 622 N.Y.S.2d at 707-08; b) Sugerman: plaintiff cannot rely on quantum meruit in face of controlling written agreement. Sugerman v. MCY Music World, Inc., 158 F.Supp.2d 316, 326 (S.D.N.Y. 2001); and c) Minichiello: Sugerman relied on Minichiello, a case limited by Morris Cohon to matter with complete absence of any memo. Springwell, 16 F.Supp.2d at 304.

[8]     15 U.S.C. § 78c(a)(4)(A) provides: "[t]he term 'broker' means any person engaged in the business of effecting transactions in securities for the account of others.".

        15 U.S.C. § 78o(a)(1) provides in relevant part that it is unlawful for an unregistered broker or dealer "to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security ….".

59, 60). <u>See Hutner v. Greene</u>, 734 F.2d 896, 901 (2d Cir. 1984) (emphasis omitted)(re: Calif. definition of broker-dealer virtually identical to the federal one); <u>accord Cornhusker Energy Lexington, LLC v. Prospect St. Ventures</u>, No. 8:04CV586, 2006 U.S. Dist. LEXIS 68959 [2006 WL 2620985] (D. Neb. Sept. 12, 2006) *18-20; <u>Salamon v. CirTran Corp.</u>, No. 2:03-CV-787, 2005 U.S. Dist. LEXIS 31332 [2005 WL 3132343] (D. Utah Nov. 22, 2005) *5-8; <u>Garrett/Kushell/Assocs.</u>, SEC No-Action Letter, 1980 SEC No-Act. LEXIS 3744 (Sep. 7, 1980) *3.

Vioni had no role in the businesses run by any defendant, and had no role in generating transaction based fees. Vioni never gave securities advice on or participated in the ACSL Transactions, and was never afterwards given a copy of the transaction documents, the Deal Structure, despite her request for them. And defendants, who are in a unique position to know the ACSL Transactions, did not support their motion with an affidavit that Vioni was engaged in giving them advice on or in effecting any securities transactions for them.

Assuming Vioni sought compensation based on securities transactions that may have been part of the ACSL Transactions, she was not required to register as a broker. The SEC has granted no-action relief or other relief where this was the only criterion present. E.g. <u>Traiger Energy Investments</u>, 48 S.E.C. 930, 1988 SEC LEXIS 151 (February 3, 1988)(SEC reversed NASD

disciplinary panel where non-registered finders merely referred customers, and received 5% of their initial investment); Paul , SEC No-Action Letter, 1991 SEC No-Act. LEXIS 925 (July 24, 1991); International Business Exchange Corporation, SEC No-Action Letter, 1986 SEC No-Act. LEXIS 3065 (December 12, 1986); Caplin & Drysdale, Chartered, SEC No-Action Letter, 1982 SEC No-Act. LEXIS 2291 (April 8, 1982).

The cases cited by defendants only fortify this conclusion. (Cap Memo p 17-20). SEC v. Martino, 255 F. Supp.2d 268, 273 (S.D.N.Y. 2003), (plaintiff provided complete brokerage services regarding stock sales); SEC v. Hansen, No. 83 Civ. 3692 *3 [1984 WL 2413], 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. April 6, 1984)(Hansen was actively involved in promoting and selling, to the public, interests in oil wells); SEC v. Margolin, No. 92 Civ. 6307 [1992 WL 279735], 1992 U.S. Dist. LEXIS 14872 *15-16 (S.D.N.Y. Sept. 30, 1992)(defendant provided clearing services for securities trades, received transaction-based compensation, and possessed client funds and securities); John R. Wirthlin, SEC No-Action Letter, [1999 WL 34898], 1999 SEC No-Act. LEXIS 83 (January 19, 1999) (SEC denied no-action relief, Wirthlin's proposed activities were significantly different from those, in letters he cited, of finders for issuers.[9] Wirthlin proposed to

---

[9] These are International Business Exchange Corporation, John DiMeno, Paul Anka, and Mona/Kauai Corporation, cited above.

be a finder for broker-dealers, which presents special
regulatory issues;[10] Joseph K. Bannon, CPA, SEC No-Action Letter,
1988 SEC No-Act. LEXIS 1756 (December 9, 1988), presented the
same question as Wirthlin, proposing to share commissions with
non-registered persons (*see* footnote 9 *supra*).

### POINT V
### THE MOTION TO DISMISS THE PROMISSORY
### ESTOPPEL CLAIM IS PREMATURE

Defendants move to dismiss the promissory estoppel claims.
(Cap Memo #2 pp 3-8). Their motion should be denied as premature
since no discovery has occurred.

In virtually every case cited by defendants, there was
sufficient evidence to determine whether or not plaintiff had
established it suffered an unconscionable injury. Thus, some
were decided on motions for summary judgment. Sugerman, 158
F.Supp.2d at 325-26 (S.D.N.Y. 2001); Belotz v. Jeffries & Co.,
1999 WL 587916 (S.D.N.Y. 1999); Bibeault v. Advanced Health
Corp., 1999 WL 301691 (S.D.N.Y. 1999). In one case, a motion to
dismiss the claim for breach of contract was denied, and since
the court found the promissory estoppel claim duplicative, it
was dismissed without prejudice. Four Finger Art Factory, Inc.,
2000 WL 145466 *8 (S.D.N.Y. 2000).

---

[10] NASD (now FINRA) has long taken the position that its members must not pay
compensation in connection with the solicitation of securities transactions
to unregistered persons. NASD Notice to Members 97-11, 101, 103-104 (Mar.
1987) (available at
http://finra.complinet.com/file_store/pdf/rulebooks/nasd_9711.pdf).

Some of the remaining cases differ from this since there was no doubt the agreement was oral, and there was no proof of unconscionable injury. E.g. North American Knitting Mills, Inc. v. International Women's Apparrel, Inc., 2000 WL 120608 *3 (S.D.N.Y. 2000).

Vioni has alleged not merely loss of income. She has alleged that defendants promised to provide, but intentionally withheld (AC ¶ 101,127-29), the ACSL Transactions documents which, at the insistence of defendants, were the means to determine her compensation. As a means to establish possible fraud, an unconscionable injury, she is entitled to discovery of such documents and of the reasons defendants withheld them. In addition, JEFFREY was a customer of Vioni who tasked her to make introductions months before CAPITAL hired her. If CAPITAL alone committed a fraud, it caused Vioni to lose JEFFREY as a customer whom she would have otherwise introduced to another completed transaction. Vioni's loss of a customer through fraud would be an unconscionable injury. See Sterling Interiors Group, Inc., 1996 WL 426379 *22 (S.D.N.Y. 1996); cf. CBS, Inc. v. Ahern, 108 F.R.D. 14, 24 (S.D.N.Y. 1985)(plaintiff invested time and over $300,000 in reliance on defendant's promise).

The substantiality of the alleged injury is a factual issue and should not be decided at the pleading stage. CBS, Inc. v. Ahern, 108 F.R.D. 14, 24 (S.D.N.Y. 1985)(citing Philo Smith &

<u>Co., Inc. v. USLIFE Corp.</u>, 554 F.2d 34, 35 (2d Cir. 1977)

(promissory estoppel claim dismissed after trial). <u>See also</u>

<u>Woolley v. Stewart</u>, 222 N.Y. 347, 352, 118 N.E. 847 (1918)

(dismissed after trial); <u>Merex A.G. v. Fairchild Weston Systems,</u>

<u>Inc.</u>, 810 F.Supp. 1356, 1358 (S.D.N.Y. 1993), aff'd, 29 F.3d 821

(2d Cir. 1994)(dismissed after trial).

## CONCLUSION

The Court should deny defendants' motion to dismiss.

Dated:  New York, New York
        September 5, 2008

                            Respectfully submitted,


                            CAREY & ASSOCIATES LLC


                            By: _/s/ MICHAEL Q. CAREY_
                                Michael Q. Carey
                            521 Fifth Avenue, Suite 3300
                            New York, NY 10175-3399
                            Tel.: 212-758-0076
                            mqc@CareyLitigation.com

                            Attorneys for Plaintiffs


Of Counsel:

Peter C. Salerno