UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LISA VIONI and HEDGE CONNECTION INC.,      :
                                           :
                         Plaintiffs,       :          08 Civ. 2950 (PAC)
                                           :
         - against -                       :
                                           :          OPINION & ORDER
                                           :
AMERICAN CAPITAL STRATEGIES LTD.,          :
PROVIDENCE INVESTMENT MANAGEMENT           :
LLC, PROVIDENCE INVESTMENT PARTNERS        :
LLC, and RUSSELL JEFFREY,                  :
                                           :
                         Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Lisa Vioni ("Vioni") and Hedge Connection Inc. ("HCI")[1] bring this action

against Defendant American Capital Strategies Ltd. ("Capital"), Defendants Providence

Investment Management LLC and Providence Investment Partners LLC (together,

"Providence"), and Defendant Russell Jeffrey ("Jeffrey"), seeking recovery under theories of

breach of contract, quantum meruit, and promissory estoppel.  Vioni claims that she separately

agreed with Capital and Providence to act for each as a finder for new business opportunities,

and satisfied her obligations to each by introducing Capital and Providence to one another, but

that neither Defendant compensated her for her services.

Defendants move to dismiss Vioni's claims pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  They contend that: (1) Vioni's breach of contract and quantum meruit

claims fail because the e-mails that she alleges constitute her written agreement with Defendants

---

[1]       HCI is wholly owned by Vioni, and "Vioni, individually, took the actions alleged in this amended
complaint." (Amended Complaint ("Am. Compl.") ¶¶ 6-7.)  Thus, when the Court refers to "Vioni" throughout this
Opinion & Order, it is referring to Vioni and HCI collectively because, for present purposes, there appears to be no
difference between the two.

do not satisfy New York's Statute of Frauds; (2) Vioni does not meet any of the basic pleading requirements for promissory estoppel; and (3) any purported agreement between Vioni and Defendants is void and unenforceable because Vioni never registered as a broker with the Securities and Exchange Commission (SEC).

For the following reasons, Defendants' motion to dismiss is GRANTED with respect to Vioni's breach of contract and promissory estoppel claims and DENIED with respect to her quantum meruit claims.

## BACKGROUND

I.   **Facts**[2]

According to Vioni, between October 2006 and September 2007, she was separately retained by both Capital and Providence, independent of one another, to introduce each to companies that could help further their respective business goals.  Capital is a publicly-traded investment corporation, while Providence was a small investment management company.  In April 2007, Vioni arranged a face-to-face meeting between Robert Grunewald, Capital's Managing Director, and Russell Jeffrey, Providence's Chief Executive Officer and Chief Investment Strategist.

Following this initial meeting, Capital expressed interest in acquiring Providence, and the two companies began working out the details of a series of transactions (referred to as the "ACSL Transactions") through which Capital would acquire Providence's investments, funds, clients, and employees.  Vioni claims that during the course of these negotiations, Capital (through Grunewald) and Providence (through Jeffrey) repeatedly assured her that she would be

---

[2]      The facts in this section are derived from Plaintiffs' Amended Complaint and the transcript of oral argument by the parties before this Court on January 14, 2009.

compensated for her efforts once the ACSL Transactions were finalized.  According to Vioni, these assurances were made both verbally and by e-mail.[3]

The ACSL Transactions were completed in September 2007.  Capital hired Providence's employees, including Jeffrey, who it placed in charge of a new mortgage-backed securities investment team.  Jeffrey and Providence also moved their investments, funds, and future business opportunities to Capital.

According to Vioni, despite their earlier oral and written statements indicating that she would be compensated for her role in facilitating the ACSL Transactions, neither Defendant paid her for her work.

## II.   Vioni's Claims

Vioni's Amended Complaint[4] advances nine causes of action that may be grouped into three categories.  First, Vioni brings breach of contract claims against Capital and Providence/Jeffrey.  (Amended Complaint ("Am. Compl.") ¶¶ 135-47, 154-69, 176-88.)  This includes a claim that Capital breached a "lift-out"[5] contract with Vioni.  (Id. ¶¶ 154-69.)  Second,

---

[3]      Vioni's Amended Complaint incorporates by reference "the e-mails exchanged between plaintiffs and defendants" (Am. Compl. at 1) and proceeds to refer to specific e-mails sent on specific dates that she alleges support her claims.  (See id. ¶¶ 67-70, 72-75, 82, 83, 86.)  Despite the centrality of these e-mails to her claims, however, Vioni failed to attach any e-mails to her Amended Complaint.  Defendants have provided the Court with five e-mail exchanges which they claim are the e-mails to which the Amended Complaint refers.  (See Decl. of Stewart D. Aaron ("Aaron Decl.") Exs. C-G.)  At oral argument, Vioni admitted that the e-mails provided by Defendants comprised part of the alleged contract between Vioni and Defendants, but also claimed that "[t]hey are a fraction of the e-mails" and suggested that there were "dozens, if not close to a hundred" e-mails that support her claims.  (Transcript of Oral Argument, Jan. 14, 2009 ("OA Tr.") at 11:22-25.)  Vioni, however, has provided only one additional e-mail (E-mail LV-000792) to the Court.  When the Court refers to "e-mails" in this Opinion & Order, it is referring to Exhibits C through G of the Declaration of Stewart D. Aaron and LV-000792, which are the only e-mails Vioni has identified with any specificity in support of her claims.

[4]      Vioni's original Complaint was filed on March 20, 2008.  On July 24, 2008, Vioni filed her Amended Complaint, which added an introductory paragraph and three promissory estoppel claims.  Otherwise, it is identical to the original Complaint.

[5]      According to the Amended Complaint, Vioni's "lift-out services" include enabling Capital to acquire Providence's employees and current and potential investments.  (See Am. Compl. ¶¶ 155-58.)  At oral argument, Vioni further explained that a lift-out, in this context, referred to "taking somebody [i.e., Jeffrey]…who has a reputation for excellence in the field, that brings a bright halo on top of [Capital] in this situation…."  (OA Tr. at 43:8-10.)  It appears that the alleged lift-out services were part of the overall services (rather than a separate service) that Vioni offered to Capital.  See infra n.7.

Vioni seeks recovery in quantum meruit from both Defendants.  (Id. ¶¶ 148-53, 170-75, 189-94.)

Again, Vioni seeks recovery from Capital for the value of the lift-out services she claims to have

provided.  (Id. ¶¶ 170-75.)  Third, Vioni claims she is entitled to relief under the theory of

promissory estoppel (id. ¶¶ 195-253), including the value of the lift-out services provided to

Capital.  (Id. ¶¶ 223-25.)

## DISCUSSION

### III.   Motion to Dismiss Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in

the plaintiff's complaint and draws all inferences in the plaintiff's favor.  See Allaire Corp. v.

Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  Nonetheless, to survive dismissal, a complaint

must plead enough facts to be plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 127 S. Ct. 1955, 1974 (2007).  The plaintiff is required to "amplify a claim with some

factual allegations in those contexts where such amplification is needed to render the claim

plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

In determining whether dismissal is appropriate, "the court may consider any written

instrument attached to the complaint as an exhibit or incorporated in the complaint by reference

as well as documents upon which the complaint relies and which are integral to the complaint."

Subaru Distributors Corp. v. Subaru of America, Inc., 425 F.3d 119, 122 (2d Cir. 2005).  In

doing so, although it must resolve any ambiguities in favor of the plaintiff, the court is "not

obliged to accept the allegations of the complaint as to how to construe such documents…."  Id.

### IV.   Breach of Contract Claims

Vioni claims that her conversations and e-mail exchanges with Grunewald and Jeffrey

constituted a contract and that Defendants breached that contract by failing to pay for her services.  (Am. Compl. ¶¶ 135-47, 154-69, 176-88.)

Defendants move to dismiss these claims on the grounds that the conversations and e-mails upon which Vioni relies fail to satisfy the Statute of Frauds under New York law.  (Def. Mem. in Support of Motion to Dismiss ("Def. Mem.") Ex. A at 4-13.)[6]

New York's Statute of Frauds states, in relevant part:

> a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, as subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> […]
>
> 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real restate interest therein, or of a business opportunity, business, its goodwill, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiation" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.  This provision shall apply to a contract implied in fact or in law to pay reasonable compensation….

N.Y. G.O.L. § 5-701(a)(10).

New York courts have held that Section 5-701(a)(10) applies where an intermediary seeks compensation for having provided "'know-how' or 'know-who', in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in an enterprise…."  Freedman v. Chemical Constr. Corp., 43 N.Y.2d 260, 267 (1977).  Moreover, "Section 5-701 is clear that oral finder's fee agreements are void," Bronner v. Park Place Entm't

---

[6]      Defendants moved to dismiss Vioni's original Complaint on June 24, 2008.  Defendants then moved to dismiss the Amended Complaint on July 28, 2008 by responding to Vioni's new promissory estoppel claims. Defendants' memorandum of law in support of their motion to dismiss the original Complaint, which addresses Vioni's breach of contract and quantum meruit claims, is attached as Exhibit A to their present motion and is incorporated therein.  (See Def. Mem. at 1.)

Corp., 137 F. Supp. 2d 306, 312 (S.D.N.Y. 2001).  Oral promises purportedly made by

Defendants to Vioni cannot support her present contract claims.  The only remaining question for

the Court, then, is whether the e-mails between Vioni and Defendants constitute a written

agreement sufficient to satisfy the Statute of Frauds.

A series of correspondence and memoranda may constitute an agreement that satisfies the

Statute of Frauds.  Bronner, 137 F. Supp. 2d at 311 (citing Crabtree v. Elizabeth Arden Sales

Corp., 110 N.Y. 48, 56 (1953)).  The writings, however, "must designate all parties, identify and

describe the subject matter and state all of the essential terms of a complete agreement.  The

writing must set forth the entire contract with reasonable certainty."  Carruthers v. Flaum, 450 F.

Supp. 2d 288, 308 (S.D.N.Y. 2006) (citations and internal quotation marks omitted).

Compensation is a material term of a finder's fee agreement, Fort Howard Paper Co. v. William

D. Witter, Inc., 787 F.2d 784, 791 (2d Cir. 1991), and absent a "meeting of the minds" on this

term, a contract is unenforceable.  Central Fed. Sav., F.S.B. v. Nat'l Westminster Bank, U.S.A.,

574 N.Y.S.2d 18, 19 (App. Div. 1st Dep't 1991); see also Morris Cohon & Co. v. Russell, 23

N.Y.2d 569, 575 (1969) (upholding "the well-established rule that in a contract action a

memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly

or by reasonable implication all the material terms of the agreement, including the rate of

compensation if there has been agreement on that matter").

The e-mails upon which Vioni relies do not "state all of the essential terms of a complete

agreement" or "set forth the entire contract with reasonable certainty," Carruthers, 450 F. Supp.

2d at 308, and therefore do not satisfy the Statute of Frauds.  In particular, the e-mails

demonstrate a distinct lack of agreement on the issue of how Vioni would be paid.

"[A]n 'offeror has no power to transform an offeree's silence into acceptance when the

offeree does not intend to accept the offer.'" Bronner, 137 F. Supp. 2d at 312 (quoting Karlin v. Avis, 457 F. 2d 57, 62 (2d Cir. 1972)).  In some e-mail exchanges, Defendants are non-responsive to Vioni's payment requests.  For example, in her April 19, 2007 e-mail to Jeffrey, Vioni suggests that they should "get a little more specific as soon as we can with how the deal between you and me will work," and recommends that her fee "be tied to the growth of the business going forward."  (Decl. of Stewart D. Aaron ("Aaron Decl.") Ex. C.)  Jeffrey's reply e-mail does not address these suggestions, and therefore cannot be considered an acceptance of Vioni's proposed terms.  (See id.)

"A seminal law of contracts is that a counteroffer constitutes a rejection of an offer as a matter of law."  Greystone P'ships Group, Inc. v. KLM N.V., 815 F. Supp. 745, 753 (S.D.N.Y. 1993).  When Defendants do respond to Vioni's suggestions about payment, they often do so by suggesting terms of their own.  At one point, Vioni asks Grunewald: "Is there any type of ownership that I could tie myself to in this structure so that I can participate in the growth of the business?  Could I act as a consultant and get paid an ongoing fee on money raised for [Jeffrey's] business for example?"  (Aaron Decl. Ex. D.)  Grunewald replies: "I think the only realistic way to work out a fee arrangement would be as a straight advisory fee or a commitment on our part to use you for a bigger opportunity than would have otherwise existed."  (Id.)  At best, these e-mails demonstrate that Vioni and Defendants were in the midst of negotiations that might eventually have led to a meeting of the minds on the issue of how Vioni was to be compensated.  Even when read in a light most favorable to Vioni, however, the e-mails do not set forth the essential terms of an agreement in a manner that satisfies the Statute of Frauds.  Vioni has therefore failed to plead sufficient facts to render her breach of contract claims plausible, Bell Atlantic, 127 S. Ct. at 1974, and the contract claims must be dismissed.

## V.    Quantum Meruit Claims

If the contract claims fail, Vioni argues that she is entitled to the value of the benefit she conferred on Defendants under a theory of quantum meruit.  (Am. Compl. ¶¶ 148-53, 170-75, 189-94.)

Defendants contend that these claims fail for the same reason as the breach of contract claims—Vioni cannot recover because the e-mails demonstrate that she and Defendants never reached a final agreement on the issue of payment.  (Def. Mem. at 15-16.)  In particular, defendants rely on the decision in Klein v. Smigel, 44 A.D.2d 248 (App. Div. 1st Dep't 1974). The plaintiff in Klein based his quantum meruit claims on a letter from the defendant, which asked the plaintiff to promise not to seek a finder's fee for work he had performed on the defendant's behalf.  44 A.D.2d at 249.  The court held that the plaintiff's quantum meruit claims failed, not only because the letter did not satisfy the Statute of Frauds, but also because (1) the letter actually negated any expression of an obligation to pay on defendant's part; and (2) the plaintiff readily admitted "that he never requested compensation, [and] was never told he would be compensated, but simply had an undefined 'intimation that he would be taken care of.'"  Id. at 250.

The facts in the present matter differ significantly from those in Klein.  First, Vioni clearly requested compensation from Defendants.  (See Aaron Decl. Exs. C, D, F, G.)  Second, Defendants never reject that assertion.  Indeed, unlike the Klein defendant's letter, the Defendants' e-mails recognize an obligation to pay.  In an e-mail dated March 26, 2007, Jeffrey tells Vioni: "I want you to have a comfort and confidence about this whole process, so that if a deal is consummated, you are compensated accordingly."  (E-mail LV-000792.)  Although

Grunewald never makes a similarly unequivocal statement, his e-mail messages nonetheless also recognize an obligation to compensate Vioni.  While Grunewald does not accept Vioni's proposal in her April 19, 2007 e-mail, he does not expressly reject the notion of payment—instead, he makes what amounts to a counteroffer, which may be interpreted as recognition that Vioni should receive some type of compensation for her services.  (See Aaron Decl. Ex. D.) Similarly, on July 17, 2007, Grunewald appears to come close to denying an obligation to pay—he tells Vioni that "[Capital] does not pay fees other than those for a retained search for the introduction of employees"—but later in the e-mail he states that her "introduction [of Capital to Providence] should give you a right of first refusal to help us raise this capital on terms consistent with those our treasury dept would otherwise receive."  (Id. Ex. G.)  Once again, Grunewald recognizes that Vioni is owed something for her work.

The present matter more closely resembles the situation in Morris Cohon.  In that case, the language of a fully-executed sales contract between the defendant and a third party indicated that the plaintiff had acted as a finder on their deal and contemplated that the plaintiff would be paid for his work.  23 N.Y.2d at 574-75.  The court held that "[i]n an action in quantum meruit…for the reasonable value of brokerage services, if it does not appear that there has been an agreement on the rate of compensation, a sufficient memorandum need only evidence the fact of plaintiff's employment by defendant to render the alleged services.  The obligation of the defendant to pay reasonable compensation for the services is then implied."  Id. at 575-76.  In the present matter, the e-mails are clearly sufficient to establish that Defendants (1) retained Vioni to perform a service on their behalf; and (2) recognized their obligation to compensate Vioni, even if the parties had not reached an agreement on what form this compensation would take.  This is

sufficient to allow Vioni's quantum meruit claims to survive Defendants' motion to dismiss.[7]

## VI.   Promissory Estoppel Claims

Under New York law, promissory estoppel requires (1) a clear and unambiguous

promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and

(3) injury sustained by the party asserting the estoppel by reason of that party's reliance.  Sterling

Interiors Group Inc. v. Haworth, No. 94-Civ.-9216, 1996 WL 426379, at *21 (S.D.N.Y. July 30,

1996) (citations and internal quotation marks omitted).  Where a plaintiff's claim for promissory

estoppel relies on a writing that does not satisfy the Statute of Frauds, she must demonstrate that

the defendant's actions caused her to suffer an "unconscionable" injury—which courts have

continually held requires more than just a showing of economic harm.  Philo Smith & Co. v.

USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977).

Even if the Court were to accept Vioni's arguments that there was a clear and

unambiguous promise upon which she reasonably and foreseeably relied, her promissory

estoppel claims fail because she has pled no facts that support a claim of unconscionable injury.

See Iqbal, 490 F.3d at 157-58.  Vioni merely claims that Defendants failed to pay her what she

was owed for her work.  In their opposition to Defendants' motion to dismiss, Vioni argues that

her injury might have resulted from fraudulent activity on the part of Defendants, and that she

must therefore be allowed to obtain discovery materials that might lend credibility to her

promissory estoppel claims.  (Pl. Opp. to Def. Mem. ("Pl. Opp.") at 23-25.)  This argument is

insufficient even at the motion to dismiss stage: Vioni's Amended Complaint pleads no facts that

---

[7]        There is no reason for Vioni to plead a lift-out claim in quantum meruit against Capital separate from her
primary quantum meruit claim against Capital.  The issue of whether, under a theory of quantum meruit, certain
occurrences (e.g. Capital's hiring of Providence's employees and acquisition of Providence's investments) are
attributable to Vioni's efforts such that she is entitled to compensation need not be decided at this time.  Suffice to
say, however, that the Court believes this is not a separate issue from Vioni's primary quantum meruit claim against
Capital.

support a claim of fraud, and makes no claims of injury other than not being paid for her work. This is insufficient to establish unconscionable injury and accordingly Vioni's promissory estoppel claims are dismissed.

**VII.   Vioni's Failure to Register as a Broker**

Brokers are defined as those who are "engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78c(a)(4)(A).  Section 15(a)(1) of the Securities Exchange Act provides that "[i]t shall be unlawful for any broker or dealer…to effect transactions in, or to induce or attempt to induce the purchase or sale of, any security…unless such broker or dealer is registered [with the SEC]."  15 U.S.C. § 78o(a)(1).  In her Amended Complaint, Vioni admits that at the time of the transactions in question she was not registered as a broker with the SEC.  (Am. Compl. ¶¶ 132-33.)  Defendants argue that Vioni is seeking fees based upon securities transactions, but that her failure to register as a broker prevents her from recovering such fees.  (Def. Mem. at 17-20; OA Tr. at 37:21-38:9.)

At the motion to dismiss stage, this argument is insufficient to defeat Vioni's quantum meruit claims.  Vioni claims that she is entitled to payment for having introduced Capital and Providence, thus paving the way for their subsequent transactions.  (OA Tr. at 42:21-43:1.)  She also proposes that, in determining the value of her work, it is appropriate to look to the transactions between Capital and Providence and compensate her by means of fees calculated in relation to those transactions.  (Id. at 27:20-28:8.)  The parties will have ample opportunity at a later stage to address the issue of whether and to what extent Vioni is entitled to certain forms of compensation under a theory of quantum meruit.  As a general matter, however, her failure to register as a broker with the SEC does not preclude her from some type of recovery for the value of her services in acting as a finder for Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The parties are hereby directed to provide the Court with a civil case management plan on or before Monday, February 9, 2009.

Dated: New York, New York
January 23, 2009

SO ORDERED

PAUL A. CROTTY
United States District Judge