UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LISA VIONI *and* HEDGE CONNECTION, INC.,

        *Plaintiffs*,

   -*against*-

PROVIDENCE INVESTMENT MANAGEMENT, LLC, PROVIDENCE INVESTMENT PARTNERS, LLC, *and*, RUSSELL JEFFREY,

        *Defendants.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-19-15

08 cv 2950 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Lisa Vioni ("Vioni") and Hedge Connection, Inc. ("HCI")[1] bring this *quantum meruit* action against Defendants Providence Investment Management, LLC, Providence Investment Partners, LLC (together, "Providence"), and Russell Jeffrey ("Jeffrey"), claiming Jeffrey and Providence failed to compensate Vioni for her role in arranging a business opportunity with American Capital Strategies, Ltd. ("American Capital"). Jeffrey and Providence move for summary judgment under Fed. R. Civ. P. 56, arguing there was no reasonable expectation of compensation between the parties. For the reasons below, and Jeffrey and Providence's motion for summary judgment is GRANTED.

---

[1] Though HCI is named as a plaintiff, Vioni's amended complaint makes it clear that HCI has no claim against Jeffrey and Providence. *See* Am. Compl. ¶ 7 ("Vioni, individually, took the actions alleged in this amended complaint."); *see also* Klausner Decl., Ex. 4 25, 29 (during HCI's deposition, Vioni, on HCI's behalf, stated that HCI did not introduce Jeffrey to American Capital and that Providence "never hired Hedge Connection to do anything"). Accordingly, HCI cannot maintain a *quantum meruit* claim against Jeffrey and Providence.

1

## BACKGROUND

Over seven years ago, Vioni commenced this action against Jeffrey, Providence, and American Capital for breach of contract, *quantum meruit*, and promissory estoppel. The amended complaint alleges that, through her work connecting American Capital with Jeffrey and Providence, Vioni earned fees that were never paid.

On January 23, 2009, the Court dismissed Vioni's breach of contract claim for failing to satisfy the New York statute of frauds. *Vioni v. American Capital Strategies, Ltd.*, No. 08 Civ. 2950 (PAC), 2009 WL 174937 (S.D.N.Y. Jan. 23, 2009). The Court also dismissed Vioni's promissory estoppel claim for failing to allege an unconscionable injury. *Id.*

On September 26, 2011, the Court granted Jeffrey, Providence, and American Capital's motion for summary judgment and dismissed the remaining *quantum meruit* claim for failing to satisfy the New York statute of frauds. *Vioni v. American Capital Strategies, Ltd.*, No. 08 Civ. 2950 (PAC), 2011 WL 4444276 (S.D.N.Y. Sept. 26, 2011).

On January 18, 2013, the United States Court of Appeals for the Second Circuit affirmed the Court's summary judgment order regarding American Capital but reversed the Court's order regarding Jeffrey and Providence. *See generally Vioni v. American Capital Strategies, Ltd.*, 508 Fed. Appx. 1 (2d Cir. 2013) (abbreviated and redacted version of the Second Circuit's sealed order). The Second Circuit determined that the parties' emails from March 26, 2007, April 19, 2007, and June 5, 2007 satisfied the statute of frauds for Vioni's *quantum meruit* claim against Jeffrey and Providence and remanded that claim for further proceedings.

On December 1, 2014, Jeffrey and Providence renewed their motion for summary judgment, arguing that while the parties' emails satisfy the statute of frauds, Vioni's *quantum meruit* claim fails as a matter of law because there was no reasonable expectation of

compensation between the parties.

## DISCUSSION

### I. Summary Judgment Standard

A motion for summary judgment should be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact cannot exist if "after adequate time for discovery and upon motion, [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such cases, "Rule 56(c) mandates the entry of summary judgment . . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. While courts must "constru[e] the evidence in the light most favorable to the nonmoving party," *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) (quotation omitted), the moving party must prevail "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. Analysis

To prevail on her *quantum meruit* claim, Vioni must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168,

175 (2d Cir. 2005) (citation omitted).

In 2006, Robert Grunewald, the managing director of American Capital, contacted HCI to seek Vioni's assistance in arranging investment opportunities. Approximately one year into their relationship, Vioni introduced Grunewald to her friend Jeffrey, an executive of Providence. Starting then, a relationship developed between American Capital, Jeffrey, and Providence. Vioni argues Jeffrey and Providence owe her a finder's fee, marketing fee, management fee, and performance fee to compensate her for arranging the introduction to American Capital. Am. Compl. ¶ 186.

Certainly, Vioni introduced Jeffrey, Providence, and American Capital. Nonetheless Vioni fails to provide evidence that she expected Jeffrey and Providence to compensate her for the introduction. Rather, Vioni expected American Capital to compensate her for that. For example, Vioni made multiple explicit demands for payment from American Capital, and even outlined her desired fee structure to Grunewald. *See* Klausner Decl., Ex. 22 (email from Vioni to Grunewald: "Is there any type of ownership that I could tie myself to in this structure so that I can participate in the growth of the business? Could I act as a consultant and get paid an ongoing fee on money raised for [Jeffrey]'s business for example? Any guidance you can give would be very appreciated."); *see also id.* at 31 (email from Vioni to Grunewald: "I have outlined what industry standard would be as payment for the deal you are about to close with [Providence]. I see payment as two different things: [marketing fees and ACAS fees]"). Moreover, when Grunewald informed Vioni that American Capital "does not pay fees other than those for a retained search for the introduction of employees," *id.* (email from Grunewald to Vioni), instead of seeking compensation from Jeffrey and Providence, Vioni sought Jeffrey's assistance in further negotiating her compensation with Grunewald. *See id.* at Ex. 30 (email from Vioni to

Jeffrey: "I must now rely on you to help negotiate marketing fees into your deal [with American Capital] for me."). And when it became clear that American Capital would not pay Vioni's fees, Vioni counselled Jeffrey and Providence to walk away from their American Capital deal. *See id.* at Ex. 34 (email from Vioni to Jeffrey: "Then I think we give [Grunewald] a week to 10 days and if he doesn't have anything concrete we consider walking."). At no point in the parties' discussions did Vioni request Jeffrey and Providence to compensate her in place of American Capital. The evidence adduced permits the Court to draw but one reasonable conclusion: Vioni did not expect Jeffrey and Providence to compensate her.

Even if Vioni did expect Jeffrey and Providence to compensate her, Vioni failed to communicate this expectation to them.[2] *See United Resource Recovery Corp. v. Ramko Venture Management, Inc.*, No. 07 Civ. 9452, 2009 WL 2746232, at *9 (S.D.N.Y. Aug. 28, 2009) (denying *quantum meruit* because the claimant "never shared with [the respondent] its belief that it would be paid"). Vioni is unable to point to any discussion with Jeffrey and Providence in which she expresses a clear expectation that they compensate her. Though Vioni informed Jeffrey that she sought "a significant upfront payment for the introduction to [American Capital] and then [to be] tied to the growth of the business going forward," Carey Decl., Ex. D, at no point does Vioni indicate that she sought this upfront payment from Jeffrey and Providence. Consequently, there is insufficient evidence demonstrating Jeffrey and Providence's intent to

---

[2] In a prior dealing with Jeffrey and Providence, Vioni demonstrated an expectation of compensation for her work locating a different investor for Providence. This expectation was understood by Jeffrey, who wanted Vioni "to have a comfort and confidence about [the] whole process, so that if a deal is consummated, [she] was compensated accordingly." Klausner Decl., Ex. 17. Though the Second Circuit ruled that Jeffrey's written statement—interpreted within the context of two other emails—satisfied the statute of frauds, it does not show Vioni communicated an expectation that Jeffrey and Providence compensate her for the introduction to American Capital.

compensate her.[3] *See* 22A N.Y. Jur. 2d Contracts § 610 ("To prove a claim for quantum meruit, there must be proof of some intent on the part of the recipient to pay for the services rendered.").

Even if an expectation of compensation existed between the parties, Vioni would not be entitled to the fees demanded. First, Vioni only ever sought the "finder's fee"[4] from American Capital. Am. Compl. ¶ 145. But since the Court has dismissed all claims against American Capital, Vioni now seeks this fee from Jeffrey and Providence. Vioni's attempt at impermissibly amending her pleading in her motion papers must fail. *See* Fed. R. Civ. P. 7(a). Next, Vioni is plainly not entitled to a "marketing fee"[5] since the predicate investments between American Capital and Providence never occurred. Statement of Uncontested Facts ¶ 28. Moreover, Vioni's status as an unlicensed broker at the time prevents her from recovering the type of transaction-based income at issue here. *See* 15 U.S.C. § 78cc(b). Finally Vioni presents no evidence indicating any entitlement to either a "management fee" or a "performance fee." In fact, the evidence submitted focuses on just two types of fee: the finder's fee and the marketing fee. *See*

---

[3] At best, a jury would have to glean Jeffrey and Providence's intent to compensate Vioni from statements such as "let's meet again if your schedule permits to iron out more specifics," Casey Decl., Ex. D, or "Lisa Vioni expects payments for the initial introduction and for any capital that is managed for [American Capital] out of its newly created [Providence] office," *id.* at Ex. G. But these statements merely indicate that Jeffrey and Providence were aware of Vioni's desire to be compensated. They cannot demonstrate that Vioni expected Jeffrey and Providence to compensate her; nor can they demonstrate that Jeffrey and Providence intended to compensate Vioni.

[4] Vioni's use of the term "finder's fee" is largely interchangeable with her use of "lift-out fee" and "ACAS fee." Essentially, Vioni sought the fee as compensation for "finding" employees at one company (Providence) who would be "lifted-out" to join another company (American Capital). *See* Klausner Decl., Ex. 31 (email from Vioni to Grunewald seeking an "ACAS fee" for "introduc[ing] a key team of [Providence] executives that are joining [American Capital]").

[5] Vioni defined "marketing fees" as follows: "If there was going to be a fund that was created that was managed by [Providencce][,] and [American Capital] invested money into that fund . . . fees [ ] traditionally would go to the manager, Russell. And traditionally the marketing person would get a percentage of those fees." *Id.* at Ex. 3 231:3–10 (Vioni Deposition).

Klausner Decl., Ex. 31.

Accordingly, Vioni fails to present sufficient evidence demonstrating an expectation of compensation from Jeffrey and Providence. Moreover, Vioni fails to present sufficient evidence demonstrating Jeffrey and Providence's intent to compensate her. Finally, Vioni fails to demonstrate an entailment to the fees demanded. The Court, therefore, cannot imply a contract between the parties and Jeffrey and Providence's motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons above, Jeffrey and Providence's motion for summary judgment is GRANTED. Vioni's sole remaining *quantum meruit* claim is dismissed and the Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
      May 19, 2015

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge