UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 6, 2017

------------------------------------------------------------X

LISA VIONI *and* HEDGE CONNECTION, INC.,

    *Plaintiffs*,

 -against-

PROVIDENCE INVESTMENT MANAGEMENT, LLC, PROVIDENCE INVESTMENT PARTNERS, LLC, *and*, RUSSELL JEFFREY,

    *Defendants*.

------------------------------------------------------------X

08 Civ. 2950 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

 Plaintiffs Lisa Vioni and Hedge Connection, Inc. (together, "Plaintiffs") bring this *quantum meruit* action to seek compensation from Defendants Providence Investment Management, LLC, Providence Investment Partners, LLC, and Russell Jeffrey (together, "Defendants") for Vioni's role in arranging a business opportunity between Defendants and American Capital Strategies, Ltd. This action was commenced on March 20, 2008, and trial is now scheduled to start before a jury on March 13, 2017, almost nine years later.

 On February 17, 2017 Plaintiffs and Defendants each submitted a motion to the Court: Plaintiffs filed a motion to introduce expert testimony[1] in their case-in-chief, and Defendants filed a motion *in limine* to exclude (1) testimony from Plaintiffs' rebuttal experts, (2) argument, testimony, and evidence regarding new theories of damages, and (3) argument, testimony, and

---

[1] Plaintiffs served Defendants with expert rebuttal reports from Michael J. Levas, Michael V. Merrigan, and Robert M. Warren. Plaintiffs have represented that they will not seek to introduce testimony from Messrs. Levas and Merrigan, *see* Ps' Opp'n at 2, so the Court addresses in this Opinion & Order only the admissibility of testimony from Mr. Warren.

evidence regarding document discovery. On February 23, 2017, Plaintiffs and Defendants filed their oppositions. On February 24, 2017, the Court issued an Order denying Plaintiffs' motion and denying in part and granting in part Defendants' motion. The Court now supplements its Order to provide its reasoning.

## BACKGROUND

The Court summarizes here only the facts and procedural history relevant to the Court's decision on the parties' pre-trial motions.[2] On September 16, 2016, the Court denied Plaintiffs' latest request to obtain further discovery relating to damages, and directed the parties to propose dates for trial by Friday, September 30, 2016. Dkt. 124. On September 30, 2016, Defendants proposed that trial start either February 13, 2017 or March 13, 2017, Dkt. 125, and Plaintiffs proposed that trial start November 1, 2017, Dkt. 126. On October 6, 2016 the Court set the following schedule:

- December 15, 2016: Parties serve any expert reports
- January 30, 2017: Parties serve any rebuttal expert reports
- March 3, 2017: Deadline to complete any expert depositions
- March 13–17, 2017: Trial

("Scheduling Order"). Dkt. 127.

On December 14, 2016, over two months later—and just one day before expert reports were due—Plaintiffs filed a petition for a writ of mandamus with the Second Circuit seeking, among other things, a stay of the Scheduling Order and for discovery to be re-opened ("Mandamus Petition"). *See* Ex. 2 to the Declaration of Corey Stark in Support of Ps' Mot. ("Stark Decl."). Plaintiffs asserted repeatedly in the Mandamus Petition that, without discovery,

---

[2] The facts underlying this dispute are set forth in detail in the Court's opinions of January 23, 2009, September 26, 2011, and May 19, 2015 (Dkt. 26, 78, 110).

2

their experts would not be able to comply with the Scheduling Order or prove damages at trial. *See, e.g., id.* at 1, 7, 12–13.

On December 15, 2016, Defendants timely served the Confidential Expert Report of Jill Niemczyk (the "Niemczyk Report") on Plaintiffs, *see* Stark Decl. Ex. 6, but Plaintiffs did not serve any expert report on Defendants. Plaintiffs' assert that their then-counsel, Michael Q. Carey, was under the erroneous impression that the Scheduling Order was stayed pending the Second Circuit's decision on the Mandamus Petition. *See* Stark Decl. Ex. 3 (December 28, 2016 emails to Plaintiffs' experts stating that "[t]he proceedings in the District Court are stayed pending decision on the [mandamus] petition."); Ex. C to the Declaration of Neal H. Klausner in Opp'n to Ps' Mot. ("Klausner Opp'n Decl.") (January 20, 2017 email stating that "[e]ach date on the District Court's [Scheduling] Order will have to be rescheduled after the result of the [mandamus] petition.").

On January 24, 2017, Defendants submitted a letter to the Court proposing dates for a final pretrial conference and advising the Court of Plaintiffs' position (and Defendants' disagreement) that the Scheduling Order was stayed pending resolution of the Mandamus Petition. Dkt. 129. Later on January 24, 2017, Plaintiffs submitted a letter to the Court requesting that the Court stay the Scheduling Order, "*nunc pro tunc*, and all other proceedings in this matter, until after the Second Circuit renders its decision on Vioni's Petition for a Writ of Mandamus." Dkt. 130. Plaintiffs asserted that not granting a stay "would simply reward [Defendants] for knowingly violating the rules of discovery, to Vioni's prejudice, effectively blocking Vioni's expert discovery and ability to proceed with trial." *Id.* On January 26, 2017, Defendants submitted a letter opposing Plaintiffs' stay request. Dkt. 131. The Court denied

3

Plaintiffs' request that same day and ordered the parties to appear at a final pretrial conference scheduled for March 9, 2017. Dkt. 132.

On January 28, 2017, Plaintiffs filed an emergency motion with the Second Circuit "to stay, *nunc pro tunc*, the [scheduling] order of the Court, dated October 6, 2016" ("Emergency Stay Motion"). Klausner Opp'n Decl. Ex. D at 1. In it, Plaintiffs stated: "Vioni did not produce expert reports on December 15, 2017 [sic] because her experts have not had an opportunity to review the Damages Documents [Defendants] withheld despite her production requests." *Id.* at 9.

On January 30, 2017, Plaintiffs served three expert rebuttal reports: the Confidential Expert Rebuttal Report of Robert M. Warren (the "Warren Report"), the Confidential Expert Rebuttal Report of Michael J. Levas, and the Confidential Expert Rebuttal Report of Michael V. Merrigan. *See* Exs. B, C, D of the Declaration of Neal H. Klausner in Support of Ds' Mot. ("Klausner Decl.").

On February 6, 2016, the Second Circuit denied Plaintiffs' Mandamus Petition and Emergency Stay Motion. Klausner Opp'n Decl. Ex. F. Also on February 6, 2017, new counsel for Plaintiffs appeared in this action and submitted a letter to the Court asking for "an adjournment of the March 13, 2017, trial to avoid significant prejudice to Plaintiffs." Dkt. 135. Plaintiffs identified as the primary reason for the request that prior counsel "negligently failed to serve timely expert reports." *Id.* On February 7, 2017, the Court denied Plaintiffs' request and scheduled a conference for February 14, 2017. Dkt. 137.

At the February 14, 2017 conference, Plaintiffs informed the Court that they would move to be permitted to use their rebuttal experts in their case-in-chief. Klausner Opp'n Decl. Ex. G at 10:22–11:2. Plaintiffs made their motion on February 17, 2017, the same day that Defendants

4

filed their *in limine* motion. Dkt. 139, 145. The parties filed oppositions on February 23, 2017. Dkt. 156, 157. On February 24, 2017, after considering the parties' submissions, the Court issued a short-form order denying Plaintiffs' request to offer Mr. Warren's testimony in their case-in-chief, and denying Defendants' request to preclude in its entirety Mr. Warren's rebuttal expert testimony. Dkt. 159. The Court explained that it would set forth its reasoning and the limitations on Mr. Warren's testimony in a separate opinion and order. *Id.* The Court did this because it needed more than one day to comprehensively detail its reasoning; but wanted to provide the parties with guidance, as soon as possible.

On February 27, 2017, the Court received a letter from Defendants advising the Court of certain extracts from the deposition testimony of Plaintiffs' rebuttal expert on damages, Robert M. Warren. Dkt. 164. Specifically, Defendants explained, among other things, that (1) Mr. Warren "did not recognize the Warren Report, had never seen certain substantive portions of the Report, and did not understand certain of the 'opinions' expressed in the report meant," (2) Mr. Warren "never signed the Warren Report, the signature appearing on the signature line above his name was not his signature, and he did not know who signed the report," (3) Mr. Warren "had never seen the documents identified in the Warren Report as 'materials I reviewed in performing my analysis and in preparing this report' until the day before his February 23 deposition," and (4) Mr. Warren "had never received, reviewed or seen a full copy of the Niemczyk Report, and had been shown only a very abbreviated version." *Id.* Defendants requested a pre-motion conference and submitted that (1) sanctions were appropriate, (2) the Court should preclude Mr. Warren's testimony, and (3) Defendants should be permitted to move for summary judgment as to Plaintiffs' inability to prove the "reasonable value of the services" allegedly provided by Plaintiffs. *Id.*

The Court held a conference on March 2, 2017 where Plaintiffs represented that they would not seek to introduce Mr. Warren's testimony at trial (including on rebuttal), without prejudice to their position that the Court erred in its February 24, 2017 Order by excluding Mr. Warren's testimony from their case-in-chief.

## ANALYSIS

### I. Plaintiffs' Motion for Leave to Offer Expert Testimony in Their Case-in-Chief

Fed. R. Civ. P. 26(a)(2)(D)(i) provides that parties must disclose expert testimony at the time that a court orders, or if there is no applicable court order, "at least 90 days before the date set for trial." If a party does not timely make its expert disclosures, Fed R. Civ. P. 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Kunstler v. City of N.Y.*, 242 F.R.D. 261, 264–65 (S.D.N.Y. 2007) (internal quotation marks omitted).

A "district court has wide discretion in punishing failure to conform to the rules of discovery." *Outley v. City of N.Y.*, 837 F.2d 587, 590 (2d Cir. 1988). Before granting "the extreme sanction of preclusion," however, a district court judge "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Id.* at 591. The four factors to consider in determining whether a district court acts within its discretion in precluding testimony under Fed. R. Civ. P. 37(c)(1) are: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a

result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

### A. Plaintiffs' Explanation for their Failure to Comply with the Scheduling Order

Plaintiffs contend that their failure to comply with the Scheduling Order[3] came as a result of prior counsel's belief that there was no need to request a stay from the district court pending the Second Circuit's determination of their Mandamus Petition. Ps' Mot. at 6. They argue that the failure therefore was not intentional. *Id.*

The record reflects, however, that the decision not to submit expert reports was strategic, as doing so would have undercut Plaintiffs' position in the Mandamus Petition that their experts could not produce reports. This position is repeated throughout Plaintiffs' Second Circuit filings. In fact, in the Emergency Stay Motion, Plaintiffs plainly stated: "Vioni did not produce expert reports on December 15, 2017 [sic] because her experts have not had an opportunity to review the Damages Documents [Defendants] withheld despite her production requests." Klausner Opp'n Decl. Ex. D at 9. The Court takes Plaintiffs' words at face value. Attorney negligence appears, then, to be a *post hoc* rationalization of a misguided and ultimately losing tactical decision.

But even if Plaintiffs' failure to comply with their discovery obligations were a result of attorney negligence, Plaintiffs' explanation still would not be compelling. First, there is no substantial justification for Plaintiffs' failure to comply; there is no basis to conclude that a

---

[3] The Court notes that preclusion of Mr. Warren's testimony also appears to be warranted because disclosure was not "accompanied by a written report—prepared and signed by the witness." *See* Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1). Mr. Warren's deposition testimony reflects that Mr. Warren (1) did not sign the Warren Report or recognize the signature on it, (2) did not remember seeing a majority of the paragraphs in the five-page report, (3) did not know what certain opinions in the report meant, and (4) had not seen a number of the materials identified in the "Materials Reviewed" section of the report at the time of the report. *See* Warren Dep. Tr. (Dkt. 167-1) at 37:14–24, 57:16–59:13, 61:8–19, 62:9–25, 64:23–66:19, 67:7–16, 68:18–22, 69:10–13, 110:14–111:3, 111:22–112:3, 112:22–113:13, 117:21–118:18, 121:24–122:14.

reasonable person could find "that parties could differ as to whether the party was required to comply with the disclosure requirement." *Kunstler*, 242 F.R.D. at 264–65. Even Plaintiffs appear to concede this: they describe prior counsel's belief that the Mandamus Petition automatically stayed the Scheduling Order as "inexplicabl[e]." Ps' Mot. at 6. Second, Plaintiffs freely chose Mr. Carey as their attorney and must accept the consequences of that choice. *Cf. Scott v. N.Y.C. Dep't of Correction*, 445 F. App'x 389, 391 (attorney neglect not "good cause" for amending scheduling order pursuant to Fed. R. Civ. P. 16(b)). If the Court were to allow Plaintiffs to introduce Mr. Warren's testimony in their case-in-chief, the Court would be sending a perverse signal to litigants that all it takes to cure a total failure to comply with discovery obligations is to fire old counsel and hire new counsel.

### B. Importance of the Testimony

Plaintiffs state that "[w]ithout experts of their own, Plaintiffs will be unable to provide some evidence to satisfy the elements of *quantum meruit* and will be naked against the testimony of Defendants' expert." Ps' Mot. at 6–7. In reaching its decision in the February 24, 2017 Order, the Court considered that it was allowing Plaintiffs to introduce Mr. Warren's testimony on rebuttal. The Court also considered that Plaintiffs could seek to introduce relevant evidence through, among other things, Ms. Vioni's own testimony (and the Court notes that Plaintiffs now take the position that they will be able to do so).

### C. Prejudice to Defendants

In issuing its February 24, 2017 Order, the Court concluded that Defendants would be prejudiced if Plaintiffs were allowed to offer expert testimony in their case-in-chief. Plaintiffs' filed their Mandamus Petition over two months after the Court entered the Scheduling Order, and the day before expert reports were due. According to Defendants (and Plaintiffs do not contend

8

otherwise), Plaintiffs did not give Defendants any advance notice that they intended to file the Mandamus Petition. *See* Ds' Opp'n at 3. As a result, Plaintiffs virtually guaranteed that Defendants would finalize the Niemczyk Report by the deadline in the Scheduling Order, all the while seemingly knowing they would take the position that they did not need to submit their own expert reports.

While it is possible that Plaintiffs believed that Defendants would simply not turn over any expert report after Plaintiffs filed the Mandamus Petition, that is not what happened. Defendants complied with the Scheduling Order and submitted the Niemczyk Report to Plaintiffs on December 15, 2016; Plaintiffs then had well over a month to digest the report before submitting Mr. Warren's report. Allowing Plaintiffs to present Mr. Warren's report in their case-in-chief would have given Plaintiffs the unfair advantage of early knowledge of Defendants' expert's position, prejudicing Defendants in trying to meet Mr. Warren's testimony. *Cf. Natixis Fin. Prods. LLC v. Bank of Am., N.A.*, 10 Civ. 3656 (RWS), 2016 WL 7165981, at *4 (S.D.N.Y. Dec. 7, 2016) ("[A]llowing one party to view the opposing party's expert reports before having to submit its own opening expert reports would afford that party an unfair advantage."). Further, if the Court had allowed Plaintiffs to introduce Mr. Warren's testimony in their case-in-chief, the Court would also have had to allow Defendants to offer rebuttal expert testimony, *see* Fed. R. Civ. P. 26(a)(2)(D)(ii), which could have resulted in additional time and resource expenditures for Defendants.

### D. Possibility of a Continuance

This case is fast approaching the nine-year mark. While the Court could have granted a continuance to allow Defendants the time to submit any potential expert rebuttal reports to the Warren Report, such a continuance would have rewarded Plaintiffs for their attempted

gamesmanship and only extended resolution of this already very lengthy case. The Court is also mindful that it should not tacitly condone "deadline slippage" since a consequence of such slippage is that "trials cannot be scheduled when they ought to be, resulting in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds." *See Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 962–63 (2d Cir. 1997).

\* \* \*

In rendering the February 24, 2017 Order, the Court concluded that Plaintiffs failed to establish substantial justification or harmlessness in connection with their failure to comply with the Scheduling Order. After considering and weighing the four factors that bear on a district court's discretion to preclude testimony, the Court held that Plaintiffs could not submit Mr. Warren's expert testimony in their case-in-chief.

## II. Defendants' Motion *in Limine*

Defendants move *in limine* to exclude (1) rebuttal expert testimony from Mr. Warren as unreliable, unqualified, and/or improper, (2) argument, testimony, and evidence regarding any new damages theories, and (3) argument, testimony, and evidence regarding document discovery.

First, Defendants' request to exclude Mr. Warren's rebuttal expert testimony is now denied as moot; Plaintiffs have represented that they will not offer Mr. Warren's testimony on rebuttal.

Second, the Court agrees that Plaintiffs may not seek to introduce evidence, argument, or testimony regarding categories of damages other than lift-out fees. Plaintiffs has previously

asserted entitlement to a finders' fee,[4] *see* Am. Compl. ¶ 186, which Plaintiffs have consistently indicated was the same as lift-out fees, *see* Plaintiffs' First Interrogatory Responses, Klausner Decl. Ex. F, at 10–11; Vioni Dep. Tr., Klausner Decl. Ex. G, at 261:4–14, 266:12–267:6; Ps' Mot. to Compel, Klausner Decl. Ex. H, at 4–10. Plaintiffs may not now, on the eve of trial, introduce new, undisclosed categories of damages. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); Fed. R. Civ. P. 37(c)(1).

Third, Plaintiffs may not introduce evidence, argument, or testimony regarding document discovery in this action because it is irrelevant. *See* Fed. R. Civ. P. 401; Fed. R. Civ. P. 402.

## CONCLUSION

As stated in the Court's February 24, 2017 Order, Plaintiffs' motion to offer Mr. Warren's testimony in their case-in-chief is DENIED. Defendants' motion *in limine* is GRANTED in part and DENIED in part. The Clerk of Court is directed to close the motions at Dkt. 145 and 149.

Dated: New York, New York  
March 6, 2017

SO ORDERED

*Paul A. Crotty*  
PAUL A. CROTTY  
United States District Judge

---

[4] Plaintiffs also asserted in their Amended Complaint entitlement to marketing fees, management fees, and performance fees. Am. Compl. ¶ 186. In its May 19, 2015 Opinion & Order, the Court held that Plaintiffs were not entitled to any of those fees. Dkt. 110 at 1 n.1, 6–7. On appeal, the Second Circuit confirmed that "Vioni cannot sue in *quantum meruit* to recover 'marketing fees'" and did not expressly address the Court's holding with respect to management fees and performance fees. Dkt. 115 at 7.